SAINT LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
v. STATE.

Opinion delivered October 21, 1907.

1. CARRIER—REFUSAL TO RECEIVE FREIGHT—PENALTY.—Under Kirby's Digest, § 6803, a penalty is imposed upon a carrier for refusing to accept property for transportation and to issue receipts or bills of lading therefor, even though, on account of a temporary congestion of freight, the carrier has insufficient stational facilities for taking care of such property during temporary delay while awaiting shipment. (Page 153.)

2. SAME—DEFENSE.—In an action against a carrier for failure to accept property tendered for shipment where the evidence shows a failure on the carrier's part to provide sufficient stational facilities for taking care of such property under ordinary conditions, it is no defense that an unusual emergency caused a shortage of cars, so that the property could not be shipped out as rapidly as customary. (Page 154.)

3. SAME—STATUTE CONSTRUED.—Kirby's Digest, § 528, forbidding a carrier to issue a receipt or bill of lading for property until the same has been received into its custody, does not relieve a carrier from liability to the penalty for refusal to receive property tendered to it for shipment. (Page 155.)

Appeal from Izard Circuit Court; *Charles E. Elmore,* Special Judge; affirmed.

*J. E. Williams* and *T. M. Mehaffy,* for appellant.

1. The statute does not admit of the construction that the failure to give a bill of lading was intended to constitute an offense. Acts 1899, pp. 88-9, § 10. This section deals with the question of rates and charges for transportation, and the issuing of a bill of lading is clearly a matter only incidental to the principal purposes intended by the statute.

Penal statutes must be strictly construed, and in favor of the alleged delinquent. In construing such a statute, the whole must be construed together. 19 Wall. 228.

2. A railroad company is prohibited from issuing any receipt or bill of lading for goods until they are actually received into its custody. Kirby's Digest, §§ 524-5, 528, 531. Hence, appellant could not have complied with the demands of the shipper in this case without subjecting itself to the penalties denounced by these statutes.

3. A railway company has the right to make reasonable regulations, and to designate the place where it will receive goods

intended for shipment. Moore on Car. 137. And may refuse to take goods when tendered to it at an unreasonable hour, or at a place other than that which it has appointed for their delivery to it. 1 Hutchinson, Carriers, 3 Ed., 155, § 147, note 9; Elliott, Railroads, § § 41, 199, 200; 125 Fed. 445; 61 C. C. A. 405; 64 C. C. A. 281. Its liability commences when it receives the entire custody of the goods for immediate transportation. 60 Ark. For definition of a station within the meaning of a statute imposing a penalty for refusing to accept freight tendered, see 104 N. C. 48.

4. In case of emergency or rush of business which the carrier in the ordinary course of business was not bound to anticipate, it is not liable for refusal to receive or to transport goods; and it is excused for delay in shipping or in receiving goods for shipment until, in the ordinary course of business, such emergency can be removed. 77 Ark. 357; 1 Hutchinson, Car., 3 Ed.; § 146; Elliott, Railroads § § 1465-6, 1470.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* for appellee.

1. The act clearly prescribes a penalty for failures to receive goods and issue bill of lading. Carriers are required to "receive, load, unload, transport, store and deliver to the consignee thereof any and all property offered for shipment, * * * * * and *shall on demand issue to shippers duplicate freight or express receipts,* etc. Act, § 10. See also § 18. The commissioners are required to "execute and enforce the provisions of this act and all laws of the State concerning railroads." Section 5, of act creating Railroad Commission. If the commissioners' jurisdiction were limited to one matter, viz.: rates, as contended by appellant, the words "any matter," "determination" and "relating to the regulation or supervision of railroads" would not have been used. Under the statute, as well as common law, all persons have equal rights to have persons and property transported by common carriers and without discrimination or delay. Const., art. 17, § 3; Kirby's Digest, § 6804; 64 Ark. 275, and dissenting opinion same case; Moore, Carriers, 18, 19. While the courts are bound to construe statutes strictly, they are also bound "to construe them according to the manifest import of their words, and to hold all cases which are within the words and mischiefs to be within the remedial influence of the statute." 1 Gall. 117; 3

Sumn. 207; 128 Mo. 384; Sutherland, Stat. Const. § § 526 *et seq.;* 108 Fed. 120; 33 Del. 1; 47 Md. 241; 53 Vt. 516; 91 U. S. 29.

Remedial statutes are to be construed "liberally throughout, notwithstanding the imposition of a penalty for their violation, on the ground that their primary object was redress and punishment. 26 Am. & Eng. Enc. of L. 661; Sedgwick on Stat. Const. 32, 310. And a liberal construction of railroad commission acts has often been given. 47 L. R. A. 572; 22 Am. & Eng. R. Cas. 499; 26 *Id.* 29.

2. The right of a carrier to make reasonable regulations is not contraverted; but such regulations must be in fact reasonable in their application. And where a tender of property for transportation is made, and their acceptance is refused, the burden is on the carrier both to show that its refusal to accept the property for transportation was justifiable, and that the regulation relied upon as an excuse was reasonable. The court's finding that "no reasonable excuse is shown for appellant's failure and refusal" to accept and transport the property is amply sustained by the evidence.

3. Appellant's contention that to have complied with the shipper's demands and issued bills of lading would have subjected it to the penalties prescribed by statute (Kirby's Digest, § § 524 *et seq.*) is without foundation. This is not an action involving the issuance of receipt or bill of lading for goods not in actual possession, but the arbitrary refusal to accept and issue bills of lading for goods offered to be placed in actual custody.

McCulloch, J. This is an action instituted by the State of Arkansas, pursuant to an order of the Railroad Commission of the State, against the St. Louis, Iron Mountain & Southern Railway Company to recover penalty for an alleged violation of its duty as a common carrier in refusing to accept for transportation, and issue bills of lading for, ten bales of cotton tendered to its agent at Calico Station in Izard County, Arkansas, for shipment to Newport, Arkansas.

The case was tried before the court sitting as a jury, the court found against the defendant, and assessed the penalty at the sum of fifteen hundred dollars. Judgment was rendered accordingly, and the defendant appealed.

The facts are as follows: J. T. Garner, a merchant at Cal-

ico, Arkansas, a station on appellant's railroad, hauled ten bales of cotton to the station, and tendered them to appellant's agent for shipment to Newport, Arkansas. The platform at the station was then covered with cotton from one to three bales deep, which necessitated extraordinary expense and trouble in getting it on the platform. The station agent of the company refused to accept the cotton for shipment or to issue a bill of lading for it until it was put on the platform by the shipper, which Garner declined to do on account of the extra expense and trouble. Garner thereupon presented his petition to the Railroad Commission, and upon hearing of the matter it was there adjudged that the railroad company had incurred the penalty under the statute for refusing to accept the cotton for transportation, and the prosecuting attorney of the circuit in which Izard County is situated was directed to institute an action for recovery of the penalty prescribed by statute.

There was testimony introduced by appellant to the effect that at the time of the occurrence which formed the basis of this action (November, 1905) there was a scarcity of cars on account of the detention of many cars in the State of Louisiana under the quarantine regulations then in force, and that this prevented the prompt transportation of cotton and other such commodities. Witnesses testified that, but for such emergency, cotton could have been shipped out promptly, so as to prevent a congestion at the stations along the line of appellant's railroad, and that under usual conditions the platform at Calico was of sufficient capacity to hold all the cotton awaiting shipment.

On the other hand, there was testimony tending to establish the fact that the platform was insufficient to hold the cotton, under usual conditions, offered for shipment, and that there was no material increase in the amount of cotton shipped from that station during the season of 1905 over the amount shipped during the preceding season.

We must, of course, accept as established the state of facts most favorable to appellee's side of the case which the evidence will warrant, and test the correctness of the court's findings accordingly.

It is first contended that the statute under which the penalty is sought to be imposed does not prescribe a penalty for failure

of a carrier to issue a bill of lading for commodities offered for transportation. It is argued that the statute was intended to deal with the question of rates for transportation and with the publication and posting of schedules thereof; and that the matter of issuing bills of lading is one only incidental to the main object of the statute.

It is true that the purpose of the statute seems, primarily, to be to require common carriers to establish rates of freight or express charges and to post the schedule of such rates. But in the same section of the statute it is plainly provided that *every* such carrier "shall receive, load, unload, transport, store and deliver to the consignee thereof any and all property offered for shipment, whether as freight or express matter, at and for charges not greater than those specified in such schedule as may at that time be in force, and shall, on demand, issue to shippers duplicate freight or express receipts, which shall state the class of freight shipped, the weight and charges." Kirby's Digest, § 6803. We are therefore of the opinion that the statute in question denounces a penalty for the refusal of a carrier to accept property for transportation and to issue receipts or bills of lading therefor. We see no reason for any other view of the statute. It is just as important, if not more so, for the Legislature to require, under penalty for failure so to do, the carrier to accept the property tendered for transportation and issue the bill of lading, as it is to require the posting of tariff schedules, and it seems plain to us that the Legislature has by this statute treated alike the failure to perform any of the requirements mentioned in the statute and prescribed the same penalty therefor. It is the duty of a public carrier to provide reasonable facilities for the acceptance of property for transportation and to transport the same with due diligence, and this statute prescribes the penalty for failure to do this. The carrier undoubtedly has the right to prescribe reasonable rules and regulations for the delivery to its agents of property for transportation, but it has no right to impose unusual conditions upon a shipper or to require him to undergo unusual expense or trouble in delivering his goods for transportation. It must accept goods tendered for immediate transportation and provide reasonable facilities for taking care of the same during temporary delays while awaiting shipment. 1 Hutchinson on Carriers, § 113.

In this case it appears from the evidence—at least the evidence warrants the conclusion—that sufficient platform facilities for receiving cotton were not provided by appellant. During the cotton shipping season of 1905 the platform was insufficient to hold the amount of cotton ordinarily on hand awaiting transportation. When this cotton was offered for shipment, the platform was covered with cotton from one to three bales deep, necessitating unusual trouble and expense in putting more upon the platform. This was an extraordinary expense, which the carrier should have borne, instead of imposing it upon the shipper, as it was the fault of the carrier that more abundant facilities had not been provided. Nor was it a defense to show that an unusual emergency had caused a shortage of cars, so that cotton could not be shipped out as rapidly as customary. This is not an action for damages caused by delay in transportation. Nor is the liability of appellant based on its failure, under extraordinary conditions, to accept the cotton and issue bill of lading therefor. As we have already shown, the evidence does not establish any extraordinary local conditions at that time concerning the shipment of cotton from that station and locality. On the contrary, it shows that the amount of cotton was about the same that it had been the year previous. But the penalty is imposed because the carrier refused to accept the cotton for transportation and issue a receipt or bill of lading to the shipper; and, having failed to provide suitable facilities for receiving cotton for transportation, the carrier can not shield itself behind a plea that the shipper refused to undergo the extra expense and trouble which it had by its own shortcomings made necessary in placing the cotton for shipment. In other words, the carrier was bound to accept the cotton at the congested platform, where it was tendered for immediate shipment, and provide a place and the extra expense of putting it in that place.

It is strenuously urged by counsel for appellant that to require the acceptance by the carrier of the cotton under the circumstances shown and the issuance of a bill of lading would be in conflict with another statute (Kirby's Digest, § 528) which forbids a carrier from issuing a recipt or bill of lading for property until the same has been received into its custody. The carrier can not in this instance escape liability because of that stat-

ute, for the shipper, when he offered to place the cotton in the custody of the carrier, did all that is required of him, and it became the duty of the carrier to accept the property, take it into its custody, and issue a bill of lading.

We are asked, also, to hold that the trial judge imposed an excessive penalty and to reduce it. The statute fixes a minimum and maximum amount of penalty, and it is the duty of the trial court or jury to assess the amount. We see no reason why we should disturb the assessment made in this case.

Affirmed.