

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

FAGAN DICKSON
FIRST ASSISTANT

October 24, 1947

Hon. E. V. Spence, Chairman
Board of Water Engineers
Austin, Texas

Opinion No. V-411

Re: Present status and
relative priority of
certain applications
pending before the
Board of Water Engi-
neers.

Dear Sir:

The facts and circumstances upon which your
questions are predicated are, in part, set out in the
opinion of the Court of Civil Appeals in Clark v. Briscoe
Irrigation Company, 200 S. W. (2) 674, writ of error pend-
ing, from which we quote as follows:

"This appeal is from a declaratory
judgment decreeing in effect that the
owner of a permit granted by the Board
(Board of Water Engineers of the State
of Texas) in April 1940, authorizing the
appropriator (permittee) to divert from
a Texas stream a specified amount of wa-
ter for the purpose of irrigating speci-
fically described land (the right to which
appropriation has ripened into a title),
is not required to apply to the Board for
authority to substitute other lands for
those designated in the permit, or to
change the purpose of use of the water
from irrigation to other lawful uses; the
right of such appropriator being free of any
regulation or control by the Board, so long
as the new use is a beneficial one authorized
by law, and does not (1) result in an in-

creased appropriation or taking a great-
er quantity of water than authorized in
the permit; or (2) impair the vested
rights of other appropriators.

"The correctness of this holding
controls the decision of the case upon
its merits.

"Substantially, the facts are these:

"April 6, 1940, the Board, upon his
application and after due notice and hear-
ing granted to R. T. Briscoe a permit to
'divert, appropriate and use' not exceed-
ing 75,000 acre-feet per annum of the un-
appropriated waters of the Brazos River,
in Fort Bend County, 'when beneficially
used for the purpose of irrigation, mining,
and municipal use' . . . . August 13, 1945,
appellee filed with the Board an application
to amend the permit so as to substitute other
specified lands for those designated in the
permit and to change the purpose of use so
as to include mining, manufacturing, and
municipal. After proper notice and hearing
the Board denied this application on Decem-
ber 13, 1945. This suit was filed by ap-
pellee on January 8, 1946, against the Board
and others, in which it sought the follow-
ing relief:

"1. A declaratory judgment decreeing
that it was not required to obtain an amend-
ment of its permit from the Board as a pre-
requisite:

"a. To change the place of use of its
waters in the manner alleged.

"b. To change the purpose of use of
its waters to include mining, manufacturing
and municipal.

"2. In the alternative, if it were
held that an amendment of the permit was
required, a declaratory judgment decreeing
that the function of the Board was purely

ministerial, with no discretion to deny
the application; and that mandamus to
compel approval of the amendment be award-
ed.

"3. In the alternative, if the Board
were held to have any discretion in the
matter, a decree that the refusal of the
Board was a gross abuse of its discretion,
and that mandamus issue to compel approval
of the application.

"4. A decree (a) as between appellee
and defendants other than the Board, and
(b) as between appellee and the State that
appellee has the right to extend its canal
and supply its appropriated waters to ir-
rigate the lands described in the applica-
tion and for industrial and other lawful
uses in or near Texas City or elsewhere in
Galveston County.

"5. A decree quieting appellee's
vested title in its appropriated waters,
and its right inherent therein to change
the place and purpose of use thereof with-
out interference from defendants, and that
cloud upon its said title by reason of
claims of defendants be removed.

"During the course of the trial (to
the court without a jury) all testimony
offered by appellants in support of their
contention that the Board had properly
exercised whatever discretion it had in
denying the application to amend the per-
mit, was excluded upon objection of ap-
pellee's counsel upon the ground that the
only issue in the case was whether appellee
had the right to use the water for other
beneficial purposes than those stated in
the permit, and whether the Board had any
discretion at all in such matters. This
statement of appellee's counsel and ruling
of the court eliminated from the case the
alternative relief sought under paragraphs

designated 2 and 3 above; and the court
rendered judgment declaratory of ap-
pellee's rights as sought under para-
graphs 1 and 4 above, and quieted the
title of appellee as against other defen-
dants than the Board as sought in para-
graph 5 above."

American Canal Company, together with others,
protested the above described application of Briscoe
Irrigation Company, and it was made a party defendant
in the trial court. It became subject to those portions
of the judgment which run to the defendants other than
the Board of Water Engineers. American did not join
in the appeal from this judgment.

On March 17, 1947, American filed its pending
application to change the purpose and place of use of
its permitted waters. On this same date, Briscoe filed
a Motion for Rehearing of the application denied by you
on December 13, 1945.

Predicated upon the foregoing, you desire our
advice as to whether: (1) your Board may rehear Bris-
coe's application, (2) the effect upon American's pend-
ing application of its failure to appeal from the judg-
ment of the trial court, and (3) the relative priori-
ties between Briscoe and American as to their pending
applications.

We will consider first the matter of rehearing
the Briscoe application.

The general policy in Texas concerning rehear-
ing of denied applications for permits by administrative
boards has evolved, for the most part, as the result of
hearings conducted by Texas Railroad Commission in con-
nection with its Rule 37. The law in this regard appears
to be as follows:

1. Absent judicial ascertainment, the Com-
mission may rehear applications covering the same subject
matter as often as it wishes. Its action on the prior
application does not necessarily govern any result it may
reach on succeeding applications. The applicant is not
required to show that conditions have changed in order to
secure rehearing by the Commission. Gulf Land Co. v.

Atlantic Refining Co., Sup. Ct., 131 S. W. (2) 73; Magnolia v. New Process Co., Sup. Ct., 104 S. W. (2) 1106; Gulf Land Co. v. Atlantic, C.C.A., 113 F. (2) 902.

2. After judicial ascertainment has been had on the merits of granting or denying the application, although such ascertainment does not prevent the aggrieved party from reapplying, nevertheless, unless conditions are shown to have substantially changed, the Commission is bound by the court's judgment. The Court in rendering its judgment looks only to conditions as they existed at the time of the Commission's decision and such judgment is binding on the subject matter only so long as conditions thereafter do not change. The original jurisdiction in such cases to determine if conditions have, in fact, changed so as to warrant rehearing rests with the Commission. Magnolia v. New Process Co., supra; Edgar v. Stanolind, T. C. A., writ refused, 90 S.W. (2) 656; Humble v. Turnbow, T. C. A., writ refused, 133 S.W. (2) 191; R. R. Commission v. Wencker, Sup. Ct., 168 S.W. (2) 625; R. R. Commission v. Humble, T. C. A., writ refused, 119 S. W. (2) 728; Gulf Land Co. v. Atlantic, 113 F. (2) 902.

3. Pending judicial ascertainment, the same rules indicated in (2) above apply and the result in such cases may be to render moot the pending litigation if the Commission reverses its decision. The reversal must, of course, be based upon changed conditions. Stewart v. Smith, Sup. Ct., 83 S. W. (2) 945; Stanolind v. Sklar Oil Co., T.C.A., writ refused, 179 S. W. (2) 376; Edgar v. Stanolind, supra; Magnolia v. New Process Co., supra.

A reading of the above cases shows that emphasis is placed upon the fact that judicial ascertainment has been had on the merits of the Commission's action in denying or granting the permit, and this appears to be the element upon which a res adjudicata effect is drawn from the judgment and applied to the rehearing application absent changed conditions. The very fact that judicial consideration extends only to conditions as they existed at the time of the Commission's decision and that the judgment has a res adjudicata effect only so long as conditions do not change is indicative that the conditions, circumstances and transactions which are considered by the Commission in arriving at its decision

on the merits, are decisive in applying res adjud-
icata to the rehearing. If the litigation, pending
or concluded, is not predicated upon the merits of
the Commission's action but upon its ability or
right to act at all, the situation, in our opinion,
is taken completely out of the above indicated rules
relating to permits subject to litigation. We have
quoted at length from the opinion in the Clark case
because we believe that the portions quoted show
clearly that both the trial and appellate courts have
been concerned with only the right and jurisdiction
of your Board to entertain applications to change
purpose and place of use, and that the merits relating
to your denial of Briscoe's application have not been
involved. For the purpose then of applying the fore-
going rules as they relate to rehearing of denied ap-
plications pending litigation, we hold that these rules
are not applicable to the situation which confronts
Briscoe's application to rehear, and that Briscoe's
denied application occupies exactly the same status as
though no suit had been filed. We, therefore, con-
clude that you may rehear said application without a
finding of changed conditions.

We now consider the effect of the trial court's
judgment on American's pending application for change.

The contentions made in the trial court and the
relief granted by it are set forth in those portions of
the opinion of the Court of Civil Appeals heretofore quoted.
Substantially, the trial court held that under existing law
neither Briscoe nor permittees generally are required to
obtain from your Board amendments to existing permits in
order to change the place and purpose of use of permitted
waters; that as between Briscoe and the Board and as be-
tween Briscoe and the other defendants, Briscoe had the
right to extend its canal system and supply water in the
manner sought by it; and that Briscoe's title to 50,000
acre-feet of water be quieted as to all parties except
the Board.

We assume for the purpose of this opinion, the
contention made by Briscoe relative to the effect of such
judgment, i.e., that as between Briscoe and American,
Briscoe obtained the exclusive right to "extend and supply"
and that American was expressly denied this right. We
must decide, therefore, whether American is bound to this

construction of the judgment through its failure to appeal.

In our opinion the effect of the judgment rendered by the Court of Civil Appeals, reversing and rendering the judgment in all respects and affirming it only in so far as it quieted Briscoe's title to 50,000 acre-feet of water, had the effect of deleting for all purposes that portion of the judgment upon which Briscoe's contentions are based, not only for the benefit of San Jacinto Conservation and Reclamation District, the only appealing defendant subject to the portion of the judgment in question, but also for the benefit of all non-appealing defendants, including American.

We recognize the general rule that where one party appeals from a judgment, the reversal as to him will not justify a reversal against the other non-appealing parties. 3 T. J. p. 1112. This rule, however, is subject to the rule that where the judgment is entire and not severable, a reversal by the appellate court inures to the benefit of those who do not appeal. 3 T.J. p. 1154, 5 C. J. S. p. 1423; Lockhart v. A. W. Snyder & Co., Tex. Sup. Ct., 163 S. W. (2) 385, 392; Valee v. Joiner, Tex. Com. App., 44 S. W. (2) 983; Reeves v. McCracken, Tex. Sup. Ct., 128 S. W. 895; Irwin v. Auto Finance Co., T. C. A., 40 S. W. (2) 871, reversed on other grounds, 60 S. W. (2) 192; Garrison v. Davis, Utah Sup. Ct., 54 P. (2) 439, 444.

The foundation of the trial court's judgment here was the absence of jurisdiction in your Board over application for change. The trial court having found no jurisdiction in your Board necessarily found that no administrative control had been provided covering this phase of our water law. It then performed what would ordinarily be the function of the administrative body by supervising and allocating the right of change. Clearly, the allocation of right made by it is untenable if, in fact, your Board has jurisdiction in the matter. In our minds, the judgment is entirely dependent upon the question of jurisdiction; and since the Court of Civil Appeals has overturned the trial court on this point, it necessarily follows that those portions of the judgment which allocate the right as between certain parties is overturned whether such parties appeal or not. The major premise which held Briscoe's right in place was removed when the

Court of Civil Appeals found jurisdiction over the subject matter in your Board, at which point we conclude that the attempted allocation failed for all purposes. For the reasons stated, the judgment is not severable and inures to the benefit of American whose pending application is in no way affected by the judgment in question.

The conclusions just arrived at result from analogy to legal principles as those principles have evolved based upon the relationship between trial and appellate court. Analogy to judicial relationships may not be applicable in deciding the questions presented here because the problem is one which, in its final analysis, involves relationships between judicial and administrative branches of government.

A related problem confronted the United States Supreme Court in Federal Communication Commission v. Pottsville Broadcasting Company, 309 U. S. 134. In that case, an applicant sought a permit for the construction of a broadcasting station and was denied because of financial inability. This finding was based upon misconception by the Commission of Pennsylvania law. On appeal, the court pointed out the error and returned the case to the Commission for reconsideration. In the meantime, other applicants had applied for the same facilities; and their applications were set down with that of the denied applicant for hearing to determine which "on a comparative basis in the judgment of the Commission will best serve the public interest." The denied applicant claimed priority and objected to the setting down of his application for hearing on a comparative basis. He sought and obtained mandamus to set aside the "comparative basis" order of the Commission. With respect to this action by the Court of Appeals, Justice Frankfurter said:

"This was not a mandate from court to court but from a court to an administrative agency. What is in issue is not the relationship of federal courts inter se - a relationship defined largely by the courts themselves - but the due observance by courts of the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III

of the Constitution. A review by a federal
court of the action of a lower court is only
one phase of a single unified process. But
to the extent that a federal court is au-
thorized to review an administrative act,
there is superimposed upon the enforcement
of legislative policy through administrative
control a different process from that out of
which the administrative action under review
ensued. The technical rules derived from the
interrelationship of judicial tribunals form-
ing a hierarchical system are taken out of
their environment when mechanically applied
to determine the extent to which Congressional
power, exercised through a delegated agency,
can be controlled within the limited scope
of 'judicial power' conferred by Congress under
the Constitution.

"   . . .

"The Commission's responsibility at all
times is to measure applications by the stan-
dard of 'public convenience, interest, or
necessity.' The Commission originally found
respondent's application inconsistent with
the public interest because of an erroneous
view regarding the law of Pennsylvania. The
Court of Appeals laid bare that error, and,
in compelling obedience to its correction,
exhausted the only power which Congress gave
it. At this point the Commission was again
charged with the duty of judging the appli-
cation in the light of 'public convenience,
interest, or necessity.' The fact that in its
first disposition the Commission had committed
a legal error did not create rights of priority
in the respondent, as against the later appli-
cants, which it would not have otherwise poss-
essed. Only Congress could confer such a
priority. It has not done so. The Court of
Appeals cannot write the principle of priority
into the statute as an indirect result of its
power to scrutinize legal errors in the first
of an allowable series of administrative actions.
Such an implication from the curtailed review
allowed by the Communications Act is at war
with the basic policy underlying the statute.

It would mean that for practical purposes
the contingencies of judicial review and
litigation, rather than the public interest,
would be decisive factors in determining
which of several pending applications was
to be granted."

No direct mandate from Court to Board is in-
volved here as it was in the cited case, nor was the
direct appellate problem presented here involved in that
case. Nevertheless, the basic problem of judicial con-
trol of administrative discretion is involved here, as it
was there. The principles announced in that case with
reference to control by the judiciary of administrative
discretion lead us to conclude that since the trial court
here has been found in error on the question of the Board's
jurisdiction, then it must follow that the attempted ex-
ercise of administrative discretion by the court in allo-
cating as between the party defendants the right of change
was a matter beyond its province and was a matter which
it could not decide unless it had correctly decided the
jurisdiction question.

This conclusion is confirmed by Borchard in his
work on Declaratory Judgments, 2nd Ed., p. 878, from which
we quote:

"The declaratory judgment cannot and
is not designed to cut down the statutory
requirements for administrative review.
Again, no court by declaration or otherwise
should attempt to control administrative
discretion, though the exercise of admin-
istrative discretion may well be decreed
either by declaration or mandamus. But
where administrative authority over a par-
ticular transaction or business is in dis-
pute, and, the facts being established, the
issue of jurisdiction is purely one of law,
there is no reason why the courts cannot
make a declaration, although in some of these
cases an injunction would be refused."
(Emphasis added)

In addition, it appears to be settled in Texas
that courts may not put themselves in the place of the
administrative body and exercise the discretion which
the Legislature has committed to that body. The rule

is thus stated in Railroad Commission v. Shell,
Sup. Ct. 1942, 161 S. W. (2) 1022:

> "If the matter covered by the order
> is one committed to the agency by the
> Legislature, and involves the exercise
> of its sound judgment and discretion in
> the administration of the matter so com-
> mitted to it, the court will not under-
> take to put itself in the position of the
> agency, and determine the wisdom or advisa-
> bility of the particular ruling or order
> in question, but will sustain the action
> of the agency so long as its conclusions
> are reasonably supported by substantial
> evidence.  This is so because since the
> Legislature has seen fit to vest the au-
> thority to exercise sound judgment and
> discretion in the particular matter in
> the administrative agency, courts will not
> undertake to usurp the powers committed to
> the agency, and to exercise the agency's
> judgment and discretion for it."

See, also, Lone Star Gas Co. v. State, 137 Tex. 279 and
Blair v. Trinity Independent School District, TCA 1942,
writ refused, 161 S. W. (2) 1030, 1033.

Consideration will now be given to the question
of priorities.

One of our purposes in citing and quoting at
length from Federal Communications Commission v. Potts-
ville Broadcasting Co., supra, is the light which that case
throws on the question of priorities.  The Commission's re-
responsibility there and the Board's duty here is to measure
applications by the standard of public welfare.  In that
case no priority was found to exist as between various ap-
plicants for the same facilities simply because one appli-
cant had filed his application earlier than the others.
Only Congress could confer such priority and it had not
done so.  In consequence neither the Court nor the Com-
mission had authority to confer priority on that basis,
the province of the court being the limited review con-
ferred upon it, and the province of the Commission being to
measure the applications in the light of public interest.

In this State certain priorities are created by statute. For example, Art. 7471, V. C. S., sets up priorities between uses of water; Art. 7472, V. C. S., provides with reference to the original application to appropriate water that the first in time is the first in right; Art. 7496, V. C. S., raises priorities in connection with presentations; and Article 7523, V. C. S., provides that the right to appropriate shall date from the filing of the application. In none of these articles do we find any inference to sustain a theory that priorities based upon date of filing exist between applications for change. As we have already pointed out in our Opinion V-309, addressed to you, your primary consideration as regards applications to change is the public welfare involved. Absent any statutory directive, and we find none either express or implied, that priorities attach because of date of filing and in view of the nature of your considerations, we advise you that no priorities based upon date of filing exist between the various applications for change now pending relative to furnishing water to the Texas City-Galveston area.

For the same reasons, we conclude that no priorities exist by reason of one applicant having applied first to extend his canal system in order to accomplish the change, or his having first described certain acreage which he desires to irrigate by reason of the change. Again we point out that your primary consideration in the matter of change is the public welfare involved, and we know of no good reason, statutory or otherwise, which binds you on grounds of priority to grant the application of one over the application of another. In our opinion, you are free to grant any or all of the pending applications within your sound discretion as to the arrangement which will best serve the public welfare.

## SUMMARY

(1) The general rule that, absent substantially changed conditions, administrative boards may not rehear denied applications in the face of concluded or pending judicial ascertainment on the merits of a Board's decision, is not applicable under the facts presented to the Board of Water Engineers, since it is apparent that both

the trial court and the Court of Civil
Appeals were concerned through declaratory judgment, not with the merits of
the Board of Water Engineers' decision,
but only with its right and jurisdiction
to hear at all applications for change of
purpose and place of use of permitted
waters. Under such circumstances the
Board may rehear the application without
a finding of changed conditions. Magnolia v. New Process Company, 104 S. W. (2)
1106.

(2) Under the facts presented
the judgment of the trial court was entire
and inured to the benefit of non-appealing parties. Lockhart v. A. W. Snyder
& Co., 163 S. W. (2) 385. The result
reached is further supported by the rule
that courts may not exercise the discretion conferred by the Legislature upon
administrative bodies. Railroad Commission v. Shell, 161 S. W. (2) 1022; Federal Communication Commission v. Pottsville
Broadcasting Co., 309 U. S. 134.

(3) No priorities based upon date
of filing exist between applications to
change purpose and place of use of permitted waters.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By       H. D. Pruett, Jr.
                    Assistant

HDP:bt

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL