## CROOKS, Collector of Internal Revenue, v. KANSAS CITY TITLE & TRUST CO.

### No. 8949.

Circuit Court of Appeals, Eighth Circuit.

Feb. 10, 1931.

E. J. Dowd, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (William L. Vandeventer, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Thomas H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellant.

Charles E. McCoy, of Kansas City, Mo. (Grant I. Rosenzweig, of Kansas City, Mo., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges.

KENYON, Circuit Judge.

Appellee brought action in the United States District Court for the Western Division of the Western District of Missouri against appellant as collector of internal revenue for the Sixth district of Missouri, claiming that it was entitled to recover certain taxes it had paid under protest for the years 1921, 1922, and 1923, which had been erroneously assessed and collected as income and profit taxes for those years.

A jury was waived in writing.

Both parties requested findings of fact and conclusions of law.

The court made findings of fact and conclusions of law, and held that under the law and the evidence plaintiff was entitled to recover the sum of $16,033.13, being the amount claimed for the three respective years with interest to date of judgment.

The short facts are these: Appellee was organized as a corporation in 1914 with a capital of $750,000 for the purpose of conducting an abstract and title guaranty business in Kansas City, Mo. It purchased that year six abstract companies in Kansas City, Mo., each having an "abstract plant," for the purpose of using them in its business. The assets consisted of abstract books, maps, plats, indices, transcripts of judgments, and the usual paraphernalia of general abstract companies. They were paid for in stock and in money. Their value is not a matter of dispute. Four of these plants were found upon trial to be ineffective. Their cost was as follows:

Dean S. Kelley Abstract & Guaranty Co..................... $85,500.00
Norman & Robertson Abstract Co. ........................ 76,000.00
Commerce Title Company....... 52,250.00
Jackson County Abstract & Realty Co. ..................... 25,000.00

Making a total cost of     $238,750.00

There is evidence that some, if not all, of the books and indices of these four plants were discarded and were stored in vaults, but

such books were only a small part of the "abstract plants." Appellee carried on its abstract of title and title insurance business, and what receipts there were from the assets of these four plants have gone into the income of appellee and taxes have been paid thereon. It may be said there was no evidence of any good will value to these plants.

In 1921 the officers of appellee, who were experienced abstract men and had been engaged in that business from fifteen to thirty years, determined that these four plants would become obsolescent within nine or ten years. It is appellee's theory that the four abstract plants on which it claims a deduction for obsolescence were property used in its business; that this property was starting on its course towards obsolescence before 1921, but that before that time it could not be determined with any reasonable certainty when the property would become obsolescent, and that when in 1921 its officers first determined as a matter of fact that the property would be completely obsolescent in 1930 it had the right to deduct annually a percentage of the cost of the property which spread over the years up to complete obsolescence would amount to the total cost, viz., $238,-750. This amount would be approximately $25,000 per annum for nine and one-half years.

Appellant's theory seems to be that the court erred in allowing and prorating part of the entire cost of the abstract plants over the last nine and one-half years of their useful life; that when appellee bought the assets of the four companies it knew they were inefficient and of no use; that it did not intend to use them and did not use them; that it bought the useless to get the useful; that the evidence shows the books were not used in the company's business, and had no part in the production of revenue for any year; that a part of the depreciable items should have been charged off before 1921, and that there was a going concern value attached to these plants acquired with the physical assets, and there is no testimony to show that it has become obsolete. However, as we read appellant's brief it seems to be conceded that the cost of the four plants was $238,750; that the abstract books would become obsolete in 1930, and that such result could have been foreseen with reasonable certainty in 1920 and not earlier. Mr. Smith, president of appellee, testified that appellee company did use the plants acquired from these different companies; also the printed abstracts and the files, and that the books were only a small part of the abstract plants.

The real complaint of appellant is that notwithstanding complete obsolescence in 1930 was determined in 1920, under this record the amount to be set aside for such obsolescence is impossible of determination and that the court's allowance is wrong. As a jury was waived in writing we are limited to the questions as to whether there was substantial evidence to sustain the findings of fact and whether they support the judgment. The court's findings seem to us quite contrary to the deductions made by appellant from the evidence. It found that appellee acquired all six of the abstract plants in March, 1915, for the purpose of using them in its business of furnishing abstracts and guaranteeing titles. It finds that four of the plants were not kept up to date; that new and modern methods had tended to supplant the methods employed. It held that it would not be justified in finding the acquisition of said plants was designed to give the plaintiff a monopoly on the business. There is evidence that some of the assets were probably not used. There is also evidence that some of them were used; that it took some three years, as one officer of appellee states, to go through all of these various records and pick out what could be used and arrange the same. Of course if these plants were purchased merely to create a monopoly and then set aside and never used in the business no claim for obsolescence could be allowed. The deduction under the law is a reasonable allowance for exhaustion, wear and tear of property used in the business, including a reasonable allowance for obsolescence. Revenue Act 1921, c. 136, § 234(a), 42 Stat. 227, 256.

The Treasury Department through the Bureau of Internal Revenue has laid down the rule as to obsolescence of abstract plants under section 234(a), c. 136, 42 Stat. 227, 256, in a ruling as follows:

"The cost of an abstract plant, found upon trial to be inefficient and to which additions were not made in order to keep it up-to-date, may be recovered through depreciation or obsolescence allowances."

The opinion as set forth in I. T. 1775 Internal Revenue Cumulative Bulletin is as follows:

"In 1921 the taxpayer purchased the abstract plant of the M. Company. At the time this plant was purchased it was thought it could be used to advantage in the abstract and title guaranty work of the taxpayer but

was found upon trial to be inefficient and the records in part a duplication of the records of the taxpayer. It was then decided not to continue additions thereto from day to day in order to keep it up-to-date.

"Advice is requested as to whether the taxpayer may take as a deduction depreciation sustained to the plant in view of the fact that it has not been added to or kept up-to-date since its purchase.

"Held, that it is a proper case for depreciation or obsolescence allowances and the cost of the plant less the salvage value thereof should be spread equally over the period from the date the permanent abandonment of the plant was foreseen to the date of the permanent abandonment and deductions allowed each year in such amounts for income tax purposes."

The rule of the Treasury Department as to deduction for obsolescence of a building is set forth in Office Decision 381, Cumulative Bulletin No. 2, January–June, 1920, as follows:

"No amount may be charged off in any year in anticipation of obsolescence of a building which may become obsolete five or ten years later. However, a certain amount of obsolescence may be claimed from the time that it becomes certain that at a definite future date the building will be obsolete. The figure representing obsolescence should be, approximately, the difference between the fair market value of the building as of March 1, 1913, or its cost if acquired after that date, less depreciation, and the estimated salvage value. This obsolescence should be spread over the period from the time such obsolescence becomes certain until the building becomes obsolete and should be claimed in the returns filed for those years."

■ The trial court found: "That in 1921 the officers of Plaintiff had substantial reasons for believing that the four abstract plants on which it is claiming depreciation and/or obsolescence would become obsolete prior to the end of their ordinary useful life, and from their experience and knowledge of the abstract and guaranty business, under all the facts and circumstances, to a reasonable degree of certainty, when said four abstract plants would become substantially obsolete." Also: "That said four abstract plants will have no substantial commercial use or salvage value and will be substantially obsolete by July 1st, 1930." When property will become obsolete is a question of fact, and the court found the fact.

That there had been depreciation and obsolescence of the assets of the four companies referred to here prior to 1921 is without doubt, but until that time, according to the evidence, it could not be determined with any reasonable certainty when there would be complete obsolescence. No part of the cost of these four abstract plants, the evidence shows, had ever been taken as a deduction prior to the year 1921. The witness William E. Glenn, Secretary and Treasurer of appellee, testified:

"Q. Was there any obsolescence or depreciation claimed on your income tax returns prior to the year 1921? A. No, sir.

"Q. When did you decide that depreciation or obsolescence was beginning on these four plants? A. From late in 1920 we discussed the matter, but it was not definitely determined until 1921."

The fact that there had been some depreciation prior to 1921 would not prevent appellee from exercising its right to take advantage of obsolescence on the entire cost of the four plants.

In Appeal of Northern Hotel Co., 3 B. T. A. 1099, the Board held that obsolescence which was not determined until 1914 could be spread over the remaining years of the useful life of the building, which would end in 1942. The building was constructed in 1892.

In Central Savings Bank v. Commissioner, 10 B. T. A. 1408, the Board said: "We are satisfied that the building was in an obsolescent state prior to 1918, although under the revenue acts no allowances on account of obsolescence were permitted prior to that year."

■ Appellant claims that on assets which were not sold, but which were used, a "rough estimate" of the expected useful life thereof could have been made prior to 1921 and a claim for depreciation or obsolescence therefor made before that time. It is apparent that the officers of this company, without any bad faith on their part, determined in 1921 that obsolescence would occur in nine and one-half years, and therefore the deduction should be spread over those years. It seems to us that appellee followed the exact rule laid down by the Treasury Department and the method of allowing obsolescence over a period of years as set forth in decisions of the Board of Tax Appeals. Appeal of Columbia Malting Co., 1 B. T. A. 999; Corsicana Gas & Electric Co. v. Commissioner, 6 B. T. A. 565; Central Savings Bank v. Com-

missioner, 10 B. T. A. 1408. There was substantial evidence to sustain the findings of fact by the court, and the conclusions of law are amply supported by such findings.

The judgment is affirmed.