REAL ESTATE - LAND TITLE & TRUST CO. *v.* UNITED STATES.

No. 229. Argued January 5, 1940.—Decided January 15, 1940.

*Mr. Joseph Neff Ewing,* with whom *Messrs. Maurice Bower Saul* and *Joseph A. Lamorelle* were on the brief, for petitioner.

*Miss Helen R. Carloss,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Arnold Raum* were on the brief, for the United States.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner, a Pennsylvania corporation, was formed in October 1927 as a result of a statutory consolidation or merger of three companies. Two of the constituent companies owned title search plants which were among the assets acquired by petitioner as a result of the consolidation. While it was known that two title plants would be acquired on the consolidation, there was at that time no definite plan for their disposition. But an immediate investigation was made and it was decided to store one of the plants in order to effect economies of operation. That was done substantially simultaneously with the consummation of the consolidation. About two months thereafter it was decided that the plant retained in use was adequate and that the one in storage would not be needed. Although for a brief period some slight use appears to have been made of the stored plant,[1] it was not kept up to date by the addition of current recordings. As a result it had only a salvage value by October 31, 1928. Meanwhile, negotiations for its sale had been unsuccessful.

In this action petitioner seeks a refund of income taxes for the fiscal year ended October 31, 1928, based on the refusal of the Collector of Internal Revenue to allow a deduction for obsolescence of this plant. It had been carried on the books of the constituent company at $275,000 and was brought into the consolidation at $800,000. The District Court, however, found that its value on March 1, 1913, was $1,000,000; on October 31, 1928, $125,000—making an actual loss of $875,000, which that court allowed as a deduction for obsolescence for the taxable year 1928. It accordingly allowed a refund. That judgment was reversed by the Circuit Court of Appeals (102

---

[1] Evidence of use subsequent to the consolidation or merger is quite tenuous, the only specific instances occurring immediately prior to the actual consummation of the consolidation on October 31, 1927.

F. 2d 582). We granted certiorari because of the asserted conflict of that decision with *Crooks* v. *Kansas City Title & Trust Co.*, 46 F. 2d 928.

Sec. 23 (k) of the Revenue Act of 1928 (45 Stat. 791) allows as a deduction from gross income a "reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." Admittedly, if the deduction is allowed under this provision it must be for obsolescence, as there has been no exhaustion, wear or tear of the title plant within the meaning of the Act. Now it is true that in the popular sense a thing which is obsolete is one which is no longer used, a meaning which gives color to petitioner's claim for deduction since there is no question that the title plant here involved is no longer utilized to any degree whatsoever. But the term "allowance for obsolescence," as used in the Act and in the Treasury Regulations, has a narrower or more technical meaning than that derived from the common, dictionary definition of obsolete. The Treasury Regulations[2] state the cir-

---

[2] Treasury Regulations 74, Art. 206, promulgated under the Revenue Act of 1928, provides in full:

"With respect to physical property the whole or any portion of which is clearly shown by the taxpayer as being affected by economic conditions that will result in its being abandoned at a future date prior to the end of its normal useful life, so that depreciation deductions alone are insufficient to return the cost (or other basis) at the end of its economic term of usefulness, a reasonable deduction for obsolescence, in addition to depreciation, may be allowed in accordance with the facts obtaining with respect to each item of property concerning which a claim for obsolescence is made. No deduction for obsolescence will be permitted merely because, in the opinion of a taxpayer, the property may become obsolete at some later date. This allowance will be confined to such portion of the property on which obsolescence is definitely shown to be sustained and can not be held applicable to an entire property unless all portions thereof are affected by the conditions to which obsolescence is found to be due." See also Bureau of Internal Revenue Bulletin "F," January, 1931.

16

cumstances under which an allowance for obsolescence of physical property may be allowed, viz, where such property is "being effected by economic conditions that will result in its being abandoned at a future date prior to the end of its normal useful life, so that depreciation deductions alone are insufficient to return the cost (or other basis) at the end of its economic term of usefulness." This Court, without undertaking a comprehensive definition, has held that obsolescence for purposes of the revenue acts "may arise from changes in the art, shifting of business centers, loss of trade, inadequacy, supersession, prohibitory laws and other things which, apart from physical deterioration, operate to cause plant elements or the plant as a whole to suffer diminution in value." *United States Cartridge Co.* v. *United States,* 284 U. S. 511, 516. See also *Burnet* v. *Niagara Falls Brewing Co.,* 282 U. S. 648, 654. Such specific examples illustrate the type of "economic conditions" whose effect on physical property is recognized as obsolescence by the Treasury Regulations. Others could be mentioned which similarly cause or contribute to the relentless march of physical property to the junk pile. But in general, obsolescence under the Act connotes functional depreciation, as it does in accounting and engineering terminology.[3] More than non-use or disuse is necessary to establish it.[4] To be sure, reasons of economy may cause a management to discard a title plant either where it has become outmoded by improved devices or where it is acquired as a duplicate and therefore is useless. But not every deci-

---

[3] Kester, Advanced Accounting (3rd ed. 1933) ch. 10; Hatfield, Accounting (1927) ch. V; Saliers, Depreciation Principles and Applications (3rd ed. 1939) ch. 4; Kester, Depreciation (1924); Transactions, Amer. Soc. C. E., vol. 81, p. 1527 (1917); Marston & Agg, Engineering Valuation (1936) pp. 83–85.

[4] 2 Paul & Mertens, Law of Federal Income Taxation, § 20.114.

sion of management to abandon facilities or to discontinue their use gives rise to a claim for obsolescence. For obsolescence under the Act requires that the operative cause of the present or growing uselessness arise from external forces which make it desirable or imperative that the property be replaced. What those operative causes may be will be dependent on a wide variety of factual situations. "New and modern methods" appear to have been one of the real causes of abandonment of the title plant in *Crooks* v. *Kansas City Title & Trust Co., supra.* Suffice it here to say that no such external causes are present, for the record shows little more than the desire of a management to eliminate one plant which was a needless duplication of another but which functionally was adequate.[5] The fact that fewer employees were required to operate the one retained than the one discarded is inconclusive here. For this is not the case of acquisition of a new plant to take the place of one outmoded or less efficient. Rather the conclusion is irresistible that the plant was discarded only as a proximate result of petitioner's voluntary action in acquiring excess capacity.

In view of this conclusion, we do not reach respondent's further objections to allowance of this claim on grounds of obsolescence.

But petitioner contends that in any event it has abandoned the plant and hence is entitled to a deduction under § 23 (f) of the 1928 Act which allows a corporation to deduct "losses sustained during the taxable year and not compensated for by insurance or otherwise." Whether petitioner has satisfied those requirements we do not de-

---

[5] According to petitioner's own witnesses, the discarded plant was a "more complete plant than any other plant in the City"; and it had a "background which went all the way back to William Penn."

cide, for its claim for refund was based exclusively and solely on the ground that it was entitled to an allowance for obsolescence. Hence, in absence of a waiver by the government, *Tucker* v. *Alexander,* 275 U. S. 228, or a proper amendment, petitioner is precluded in this suit from resting its claim on another ground. *United States* v. *Felt & Tarrant Mfg. Co.,* 283 U. S. 269. There has been no amendment and there are no facts establishing a waiver.

Accordingly, the judgment of the Circuit Court of Appeals is

*Affirmed.*

MR. JUSTICE ROBERTS and MR. JUSTICE REED took no part in the consideration or decision of this case.