## A. M. CAMPAU REALTY CO. v. UNITED STATES.

No. 45945.

Court of Claims.

Jan. 6, 1947.

LITTLETON, Judge, dissent in part.

Clarence F. Rothenburg, of Washington, D. C. (Hamel, Park & Saunders, of Washington, D. C., on the brief) for plaintiff.

H. S. Fessenden, of Washington, D. C., Douglas W. McGregor, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, MADDEN, JONES, and WHITAKER, Judges.

WHITAKER, Judge.

The plaintiff's suit is based upon the allegation that the Commissioner of Internal Revenue erroneously included within its in-

come for the year 1936 the sum of $105,600. This resulted in additional income and excess profits taxes and interest thereon of $27,332.71. This additional amount was paid in installments during the years 1938 to 1944. Claims for refund of these payments were duly made, each alleging the same grounds.

The first claim was rejected on September 12, 1941. The other claims have not been acted upon, but more than six months have elapsed since the dates they were filed.

The amount of $105,600 included in plaintiff's 1936 income is the difference between the face amount of some of its bonds and the amount at which plaintiff purchased them. The Commissioner of Internal Revenue held that this difference constituted income to the plaintiff.

In 1904 plaintiff purchased a piece of property in Detroit, Michigan, which is referred to in the record as Parcel A. On January 12, 1920 it bought another piece of property in Detroit for $121,139.82, which is referred to as Parcel B, and on May 13, 1920, it purchased another piece of property in Detroit, for $45,000, which is referred to as Parcel C. It constructed a building on Parcel C during the years 1924 to 1926 at a cost of $150,033.41, and during the years 1925 to 1926 it constructed a building on Parcel B at a cost of $152,-136.18. The total amount invested in the three Parcels was $497,809.41. On November 17, 1926, plaintiff issued $500,000 of first mortgage serial bonds bearing 5½ percent interest, secured by mortgages on the above property.

In the year 1932 plaintiff's financial condition was bad. In the latter part of that year it defaulted as to a part of the sinking fund requirements on its bonds, and on May 1st of the following year it defaulted in the payment of interest thereon, and on November 1, 1933, it defaulted in the payment of the principal then due.

A bondholders' protective committee was appointed. This committee communicated from time to time with the holders of the bonds advising them of steps which had been taken and which were in contemplation for the protection of their interests.

Finally, on April 28, 1936, plaintiff wrote the holders of its bonds offering to purchase them at 60 cents on the dollar. This letter went into some detail as to the financial condition of the company. It was stated that the value of the properties securing the bonds had declined to $262,500, which was said to be 62.8 per cent of the value of the outstanding bonds. At the time there were $373,500 of bonds outstanding. A condensed balance sheet was enclosed with the letter. Two days later the bondholders' protective committee told the bondholders that they thought the company's offer was advantageous and advised acceptance.

By the end of September 1936 the company had purchased for $158,400 bonds of a face value of $264,000. This left outstanding bonds totalling $109,500, with accrued interest thereon in the sum of $21,081.25. The original mortgage on Parcels A, B, and C, continued as security for the bonds not purchased.

1. Plaintiff in its original petition, filed September 2, 1943, asked a judgment for the amounts paid during the years 1937 to 1940 on account of the additional assessment. An amended petition was filed on July 3, 1945, asking a judgment for all payments made from 1938 to 1944. In its amended petition plaintiff alleges that it filed claims for refund based "on the grounds that the said sum of $105,600 * * * was erroneously included in plaintiff's income for 1936 by the Commissioner." In its brief plaintiff says that this amount was a gift from the bondholders to it and, therefore, was not income, under the authority of Helvering v. American Dental Co., 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785.

In this position plaintiff is apparently correct. In that case the court differentiated between a purchase of its bonds by a corporation on the open market and the purchase of them from the bondholders direct. In the latter case the Supreme Court held that the forgiveness of any part of a debt by a bondholder, without any consideration to him, was, of course, gratuitous and, therefore, a gift within the meaning of the statute, whether or not

the motives leading to the forgiveness were of a business nature or selfish. We see no distinction between the case at bar and the case cited.

However, the defendant says that plaintiff is not entitled to rely on this ground because its claims for refund were not based thereon. Plaintiff says both in its petition and in its brief that its claims for refund were based on the broad unrestricted ground that it had realized no income in the year 1936 in connection with the reorganization of its first mortgage bond issue. We regret that we are unable to agree with plaintiff. Its claims for refund were based on the ground that it realized no income in connection with the reorganization of its bond issue, it is true, but the reason it assigned for this statement was not that its bondholders had forgiven a part of the debt it owed them.

Plaintiff's claims for refund were on the regular form of the Bureau of Internal Revenue. Its reasons for the allowance were contained in a statement attached thereto. This was based on grounds numbered 1 and 2. The first ground read as follows:

"There was no income properly credited to taxpayer in the calendar year 1936 in connection with the reorganization of its first mortgage bond issue, effective November 1, 1936."

Following this statement, and in explanation thereof, the claims set out there had been a shrinkage in value of the property securing these bonds of $220,309.41, and that there had been "a reduction or scaling down of indebtedness in the amount of $105,600," resulting from the purchase of these bonds at 60 cents on the dollar. As a conclusion from these facts the refund states:

"It is believed, therefore, that since the loss of $220,309.41 is greater than the scaling down of the $105,600 in the indebtedness, there is actually a loss instead of a gain, in connection with the closed transaction arising in 1936 from a reorganization of capital structure."

Obviously there is no suggestion therein that the $105,600 was a gift to it by its bondholders and, therefore, was not income.

Nor is there any such suggestion in the alternative ground set out in the claim for refund. This ground reads as follows:

"In the alternative, should it be held that income did accrue to the taxpayer by reason of the reorganization of its first mortgage bond issue effective as of November 1, 1936, then the taxpayer realized no income in 1936 by reason of said transaction because any profit or loss realized by reason thereof would be properly includable in the year and in the amount determined by the actual cancellation of the bonds retired by the Trustee for the bondholders in accordance with the requirements of the Michigan Public Trust Commission. No bonds were retired or cancelled in 1936."

■ In United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025, the court held that a taxpayer cannot maintain a suit unless he had first filed a claim for refund which gives notice to the Commissioner of the amount and nature of his claim for a refund. Later, in Real Estate Title Co., v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542, the court refused to consider whether or not plaintiff was entitled to a refund under the section of the Revenue Act allowing a deduction for "Losses sustained during the taxable year and not compensated for by insurance or otherwise," Revenue Act 1928, § 23(f), 26 U.S.C.A. Int. Rev.Code § 23(f), since the taxpayer had based its claim for refund on the ground that certain of its assets had become obsolete. It held that it was entitled to the deduction only if it was entitled to it under the section allowing a deduction for obsolescence, even though it appears that the facts alleged in support of this ground were sufficient to permit the deduction under the section providing for "losses sustained."

■ In the case at bar the plaintiff sets forth facts which show that the reduction in its bonded indebtedness was a gift and, therefore, not income, but, since it did not allege that it was a gift, and for this reason was not income, but because the decline in value of its properties was greater than the amount of the indebted-

ness reduced, it cannot recover on the gift theory. Real Estate Title Co., v. United States, supra. In that case the facts alleged were sufficient to support the deduction under the "losses sustained" section; but the Supreme Court rejected the plaintiff's claim because it had alleged that these facts showed it was entitled to the deduction under the obsolescence section instead.

We confess that we think this rule holds the taxpayer to quite strict an account in preparing its claims for refund, but we have no option but to follow it.

■ 2. We think it is clear that the Commissioner was correct in rejecting the claims on the ground alleged, to wit, that no income had been realized because the shrinkage in value of plaintiff's properties exceeded the reduction in indebtedness. The shrinkage in value of its assets was not a closed transaction. Had the plaintiff sold these properties and thus sustained a loss on them, it, of course, would have been entitled to offset this loss against any income realized from the reduction in its indebtedness, but, so far as the record shows, this did not happen. The value of the property merely declined. Under all the authorities, this is not sufficient to entitle plaintiff to claim a loss. United States v. S. S. White Dental

Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120, and cases there cited; Dick & Bros. Brewing Co. v. United States, 67 Ct.Cl. 505, 511.

■ 3. Plaintiff devotes but little argument in support of the alternative claim asserted in its claim for refund. It is clear that it is not entitled to recover thereunder. Whatever gain it may have realized upon the purchase of its bonds at less than their face value was, of course, realized at the time of the purchase, whenever the bonds may have been cancelled. Tennessee Consolidated Coal Co. v. Commissioner of Internal Revenue, 6 Cir., 145 F.2d 631.

For the reasons stated, we are of the opinion plaintiff is not entitled to recover. Its petition will be dismissed. It is so ordered.

MADDEN and JONES, Judges, and WHALEY, Chief Justice, concur.

LITTLETON, Judge (dissenting in part).

I am of the opinion that in the circumstances of this case the claim for refund was sufficient to authorize the Commissioner to make the refund claimed and is, therefore, sufficient to entitle plaintiff to judgment in this court.