Herbert P. WEINMANN,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 236, Docket 25963.

United States Court of Appeals
Second Circuit.

Argued March 11, 1960.

Decided May 9, 1960.

Lincoln Orens, New York City (Eric W. Weinmann, New York City, on the brief), for plaintiff-appellant.

James McKinley Rose, Jr., Asst. U. S. Atty., S. D. N. Y., New York City (S. Hazard Gillespie, Jr., U. S. Atty., and Charles T. Beeching, Jr., Asst. U. S. Atty., New York City, on the brief), for defendant-appellee.

Before CLARK, WATERMAN, and LEWIS,* Circuit Judges.

CLARK, Circuit Judge.

Plaintiff claims a deduction for losses allegedly incurred through the nationalization of his property by the Republic of Czechoslovakia in 1945. Upon denial of this claim by the Commissioner of Internal Revenue he instituted this tax refund action. The court below dismissed the complaint on two grounds: that plaintiff is limited by his claim for refund to recovery under § 23(e) (3) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(e) (3), under which he cannot prevail; and that he has failed to establish a prima facie case for recovery under § 23(e) (1) and (2). D.C.S.D. N.Y., 177 F.Supp. 562.

Upon the death of his father in 1937, plaintiff inherited a ⅓ interest in an industrial enterprise, the Weinmann Works, which consisted of a glass factory, a zinc factory, and a power plant in Czechoslovakia, and a ¼ interest in 8,154 shares of a Czechoslovakian mining corporation, Bruexer Bergbau. Following the "Munich Pact" of September 1938, Germany occupied the area of Czechoslovakia in which the Weinmann Works were located, and in March 1939 seized the remainder of the country. Throughout this period the Bruexer Bergbau stock certificates were on deposit with the Bohemian Union Bank in Prague. In 1940 the Germans converted these shares into shares of the Sudetenlandische Bergbau, a German corporation created and controlled by the Herman Goering Works, and with which a number of Czechoslovakian mining enterprises were merged. The district court found that plaintiff's interests were confiscated by the invaders in November 1942.

Plaintiff fled Czechoslovakia in 1939 and has been a resident of the United States since 1941. He applied for and received a full refund of his 1941 taxes under the war loss provisions of the Internal Revenue Code of 1939, 26 U.S.C. § 127, added by the Revenue Act of 1942. Under this section the property, located in German occupied territory, was conclusively presumed to have been seized or destroyed on December 11, 1941. See Shahmoon v. C. I. R., 2 Cir., 185 F.2d 384; Andriesse v. C. I. R., 12 T.C. 907. Since the basis of the property exceeded his 1941 income, plaintiff seeks a deduction for 1945 on the ground that he recovered the property in May 1945 and that it was nationalized without compensation in October of the same year.

In his claim for refund of 1945 taxes plaintiff asserted that the nationalization of his property amounted "to either a loss by theft or otherwise within the purview of Section 23(e) (3) of the Internal Revenue Code or loss by an involuntary conversion for which no compensation, whatsoever, has been obtained." It is common ground that nationalization does

* Of the Tenth Circuit, sitting by designation.

not constitute a casualty or theft loss under I.R.C.1939, § 23(e) (3), and that § 117(j), 26 U.S.C. § 117(j), the only provision of the Code specifically mentioning involuntary conversion, is inapplicable. From this the Government asserts that taxpayer has failed to set forth a "ground" for refund under § 29.322–3 of Regulations 111,[1] issued under I.R.C.1939, § 3772, 26 U.S.C. § 3772.[2] The court below sustained this contention, citing Daley v. United States, 9 Cir., 243 F.2d 466, certiorari denied 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44; Rogan v. Ferry, 9 Cir., 154 F.2d 974; French v. Smyth, D.C.N.D.Cal., 110 F. Supp. 795, affirmed French v. Berliner, 9 Cir., 218 F.2d 351; and Kauffman v. Westover, D.C.S.D.Cal., 111 F.Supp. 752. To these cases the Government adds Angelus Milling Co. v. C. I. R., 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619; Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542; and United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025. Taxpayer's position is that none of these cases go so far as to equate "grounds" with "code sections," and that the facts recited in his claim, which describes the nature of the property, his inheritance thereof, and its nationalization without compensation, in conjuction with the asserted ground of "involuntary conversion," clearly sufficed to advise the Commissioner that a claim was stated under § 23(e) (1) and (2). While noting the persuasiveness of taxpayer's position, we find it unnecessary to decide the point in view of the conclusion reached on the merits.

### The Weinmann Works

■ In early May 1945, the Germans withdrew from Czechoslovakia, leaving the country in a chaotic condition. There was evidence that one Joseph Stejskal took charge of the Works following the withdrawal. He applied for and secured on June 4 an appointment as "temporary national administrator" from the "Provincial National Committee." This appointment was issued under the authority of Decree No. 5, promulgated by President Benes on May 23, which established a program of National Administration over industries deemed critical to national recovery;[3] but taxpayer's witnesses testified that the appointment was legally void or voidable under the decree. The Works were thereafter nationalized pursuant to Decree No. 100 of October 24, 1945.

Taxpayer's brother, the managing partner of the Works, testified that in August 1938 he had given Stejskal, a young accountant employed at the Works since the summer of 1937, oral instructions to manage the Works on behalf of the owners in the event of German occupation and withdrawal. These alleged instructions were in addition to written orders to the plant managers regarding the continued operation of the factories. Upon this evidence the court below concluded that "if Stejskal did in fact take

1. " * * * The claim must set forth in detail each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof * * *."

2. "§ 3772. *Suits for refund*
"(a) *Limitations*
"(1) *Claim.* No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

3. Paragraph 20 of Decree No. 5 provided:
"(1) Transactions of the owners, possessors and administrators of property placed under national administration, in regard to such property and made after this Decree has come into force, are invalid.
"(2) The prior owners, possessors and administrators of the property placed under national administration shall refrain from any interference with the activity of the National Administrator."

charge of the plant, there is no proof that he acted on behalf of the plaintiff." D.C.S.D.N.Y., 177 F.Supp. 562, 565. The issue whether Stejskal acted as taxpayer's agent and effected a recovery of the Works presents a question of fact as to which we perceive no ground under F.R.Civ.P., rule 52(a), for disturbing the finding below.

### The Sudetenlandische Bergbau Stock

As evidence of the recovery of his interest in Sudetenlandische Bergbau, plaintiff introduced a letter from the Bohemian Union Bank dated January 1, 1946. This communication stated that the Bank held "Reichsmark 1,304,000 preferred stock 'Sudetenländ, Bergbau'/'Sudetenland Mining.'/" in the account "Property Authority * * * sub-account Estate of Dr., Engineer, Edmund Weinmann." Although this letter was dated subsequent to the promulgation of Decree No. 100, nationalization thereunder affected only the assets and to some extent the liabilities of a firm, leaving its corporate identity intact. But the stock would thereby be rendered valueless, at least where, as here, the holder was not entitled to indemnification. See De Reitzes-Marienwert v. C. I. R., 21 T.C. 846, 851.

■ Before considering plaintiff's contentions as to recovery of this stock, we turn to a consideration of the statutory scheme treating war losses and recoveries. In this regard the contrast between I.R.C.1939, § 127(a), dealing with losses, and § 127(c), dealing with recoveries, should be noted. Although a presumption of loss as of the date of declaration of war is prescribed, Congress has not enacted a presumption of recovery upon the termination of hostilities. Kenmore v. C. I. R., 18 T.C. 754, 758, affirmed 2 Cir., 205 F.2d 90. Thus the taxpayer has the burden of proving the fact of recovery. Kenmore

v. C. I. R., supra, 2 Cir., 205 F.2d 90. Although commentators have criticized the difficulties faced by a taxpayer in establishing the fact of recovery and the date thereof, Congress has not provided any liberalization. See, e. g., Tarleau, Recovery of War Losses—Tax Effects, 80 J. of Accountancy 168 (1945); Kramer, War Losses, Their Continuing Effect Under Section 127, 30 Taxes 376, 379 (1952). Furthermore, the taxpayer must establish the basis of the recovered property, which under § 127(d) is "an amount equal to the fair market value of such property, determined as of the date of the recovery," as adjusted by previous tax recognition.[4] The difficulties involved in proving such fair market value have also been recognized. See, e. g., Tarleau, supra at 174: "The determination of fair market value is difficult at best. With respect to war loss recoveries the use of ordinary rules are [sic] peculiarly hard to apply. The concept of a willing buyer and a willing seller dealing at arm's length in a freely competitive market has little utility when one is dealing with property under the chaotic state of present-day [1945] Europe. * * * [C]urrency restrictions, threat of impending nationalization, destruction of markets previously served, and similar circumstances make property values extremely problematical."

■ Plaintiff's position is that no overt act of recovery of the stock need be shown, since the certificates had been continuously held by the Bank on taxpayer's behalf. Reliance is placed on Judge Learned Hand's dictum in Kenmore v. C. I. R., supra, 2 Cir., 205 F.2d 90, 92: "We do not find it necessary to decide whether an overt act of 'recovery' was necessary in the case of property within enemy control, if it had been continuously occupied by the owner, or by someone who had held under him; but

---

4. The Revenue Act of 1951 amended § 127 (c) to provide that a taxpayer whose recovery would otherwise be includable in his gross income may elect to consider the fair market value of the recovery as equal to the adjusted basis of the interest at the date of loss. This option, however, is not asserted to be available to the plaintiff herein.

there is much to be said for that interpretation." There, however, the property in question was a "villa" in Vienna which allegedly had been continuously occupied by taxpayer's relatives. Cf. Solt v. C. I. R., 19 T.C. 183. Here plaintiff has shown merely that stock certificates, as converted by the Germans, were in the custody of his bank. This evidence is in marked contrast to what was considered to constitute a recovery in Eres v. C. I. R., 23 T.C. 1. In the Eres case, the board of directors, in actual control of the corporation, recognized taxpayer's share holdings and authorized cash withdrawals against his capital account. Here plaintiff has not shown any such recognition by the corporation of his stock certificates; but rather he has adopted the position that his interest was confiscated by the Germans in 1942. Since this interest was apparently created and governed by German law, Schnur v. C. I. R., 10 T.C. 208, 217, plaintiff has shown only a recovery of the paper certificates.

Even assuming that a stock interest in the corporation had been "recovered," plaintiff has nevertheless failed to establish that he recovered anything of value. See Feinstein v. C. I. R., 24 T.C. 656, 657–658. Aside from the failure to adduce affirmative evidence of a market value for the shares, Goldner v. C. I. R., 27 T.C. 455, 461, it seems dubious that preferred shares of a German corporation formed by the forced consolidation of Czechoslovakian mining properties and controlled by the Herman Goering Works would be marketable at the time of the German collapse in 1945. Evidence was introduced, over the Government's objection, of a valuation of the assets of the Sudetenlandische Bergbau computed by the British Foreign Compensation Commission in order to adjudicate claims of British subjects.[5] In addition to the objection of hearsay, which seems to have been properly asserted, there is no showing of the rele-

vance of this asset valuation to the fair market value of the securities. Further, it was not shown that plaintiff could reach these assets or take any effective action or exercise any control over them. Cf. Sonnenberg v. United States, 2 Cir., 268 F.2d 537.

Since plaintiff has thus failed to prove the recovery of any assets, the order of dismissal is affirmed.

---

5. For a description of the operation of this Commission, see Drucker, Compensation for Nationalized Property: The British Practice, 49 Am.J.Int'l L. 477 (1955).