**The ANDERSON COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 18281.**

United States Court of Appeals, Seventh Circuit.

July 2, 1971.

Rehearing Denied Aug. 27, 1971.

Pell, Circuit Judge, concurred in part and dissented in part and filed opinion.

Gilbert Gruenberg, Gary, Ind., Arthur B. Smith, Jr., Robert C. Claus, Chicago, Ill., Wayne S. Bishop, Washington, D. C., for plaintiff-appellant; Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Hodges, Davis & Gruenberg, Gary, Ind., of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Leonard J. Henzke, Jr., Atty., U. S. Dept. of Justice, Washington, D. C., William C. Lee, U. S. Atty., Fort Wayne, Ind., Lee A. Jackson, William A. Fried-lander, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before KILEY, PELL and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

The issue on appeal is whether the district court[1] erred in denying the Anderson Company (Company) a refund of $208,668.07 excise tax, paid by the Company part voluntarily and part under deficiency assessments. We find no error and we affirm.

The taxes in suit were imposed by virtue of manufacturer's excise taxes levied under Section 4061(b) of the Internal Revenue Code of 1954.[2] The taxes were imposed upon the Company's sales of Serviseller cabinets and stands to its wholesalers for the period 1960–1963. The wholesaler, in the sales, purchased either a cabinet or stand or both, paying $24.00 for each. The sale of each cabinet or stand included a refunding certificate which was redeemable, upon presentation to the Company, in windshield wipers and wiper blades. The wholesaler could not itself use the certificate. Its use was restricted to retailers (gasoline station operators) who purchased the cabinet or stand, or both, from the wholesaler. The retailer paid $36.00 for each cabinet or stand, and received with each the refunding certificate. The profit to the wholesaler was $12.00. The retailer received, in exchange for the certificate, wipers and blades which would have cost him $36.00.

The cabinets were of bright yellow metal, bearing red and black bold face advertising of plaintiff's trademark ANCO, and were equipped with a device for testing wiper blades. The cabinet also provided pre-sale storage place for the wiper arms and blades. The stand, which held the cabinet, had large wheels for easy movement, and had a place for the Company's advertising posters which could be changed according to seasons. The Company included with the stand

---

1. 28 U.S.C. § 1346(a) (1).

2. 26 U.S.C. Sec. 4061.

twenty-four different plastic posters advertising ANCO products.

The parties stipulated that the wipers and blades were subject to the 8% manufacturer's excise tax, and that the cabinets and stands were not.[3]

In practice, prior to the deficiency assessments, the Company treated the transactions as a combination sale of taxable wipers and blades and non-taxable cabinets and stands. Under this treatment the sale price of the combination would be subject to the manufacturer's excise tax only to the extent that the sale price of the taxable merchandise was properly proportioned to the sale price of the entire transaction. The Company allocated 50% of the sale price to the cabinet or stand, and 50% to the wipers and blades. The 50% allocation was based on the proportionate cost to the Company of manufacturing the wipers and blades and of purchasing the cabinets and stands from another manufacturer.

The Company voluntarily paid the amount it allocated to the wipers and blades, and paid under duress of the assessments the tax on the amount it allocated to the non-taxable cabinet or stand. It thereafter brought this suit for refund of the $78,816.43 paid voluntarily and $129,851.64 it paid under the deficiency assessments.[4]

The Company argued before the district court that the transaction was simply a sale of non-taxable cabinets and stands and that consequently no tax was owing on the entire transaction; or, in the alternative, that the transaction was a combination sale and only the tax paid voluntarily on the 50% was owed.

The district court, looking to the substance rather than the form of the transaction, held that the transaction was a

sale of taxable items. It found that the sale to the wholesaler of a cabinet or stand, including the certificate for wipers and blades, was a sale of the wipers and blades at their normal price, with the cabinet or stand being "advertising materials" given free of charge. The court thought that the transaction was not a combination sale since taxable items in the package were ultimately for customer resale, while the non-taxable items were distributed simply for the "promotion of [Company's] products." We think it is sufficient to support the district court's decision if the evidence sustains its finding that the cabinets and stands were advertising material distributed free of charge since there can be no combination sale if the non-taxable items are not sold.[5]

I.

Section 4061(b) of the Internal Revenue Code[6] imposes upon automobile "parts or accessories" sold by the manufacturer "a tax equivalent to 8 per cent of the price for which so sold. * * *" Section 4216 of the Code[7] defines sale price under § 4061 and establishes a method of determining that price in certain circumstances. In interpreting that provision, the Internal Revenue Service has issued rulings which establish the manufacturer's sale price of a taxable item which is included in a package sale along with other non-taxable items. Thus, Rev.Rul. 61–27, 1961–1 Cum.Bull. 481 provides:

> * * * where a taxable article and non-taxable article are sold by the manufacturer as a unit, the manufacturer's excise tax applies to that portion of the manufacturer's sale price of the unit which is properly allocable to the taxable article. * * *

3. They were not accessories within the meaning under Section 4061(b).

4. There is no question before us as to the judgment for plaintiff for $36,889.68 plus interest under Count I, which defendant concedes plaintiff was entitled to recover.

5. Taxpayer does not argue in this court, as it did below, that no tax was owing

on the sales, but urges that the transaction was a combination sale and that the tax on the 50% of the selling price, paid pursuant to the deficiency assessment, should be refunded.

6. 26 U.S.C. § 4061.

7. 26 U.S.C. § 4216.

See also S.T. 943, 1952–1 Cum.Bull. 212; Rev.Rul. 69–73, 1969–1 Cum.Bull. 284; Rev.Rul. 69–394, 1969, Int.Rev.Bull. No. 28, p. 26. In Rev.Rul. 69–73, *supra,* the IRS described two situations in which a combination sale arose, and demonstrated how the tax should be computed on the transactions involved:

*Situation 2.* A manufacturer sells taxable articles and "gives" the purchaser certain nontaxable articles as a "bonus" or "free goods." The sale price of the shipment is $15. The normal selling price is $20, of which $15 is attributable to the taxable articles and $5 to the nontaxable articles.

*Situation 3.* A manufacturer sells nontaxable articles and "gives" the purchaser certain taxable articles as a "bonus" or "free goods." The sale price of the shipment is $15. The normal selling price is $20, of which $5 is attributable to the taxable articles and $15 to the nontaxable articles.

\*     \*     \*     \*     \*     \*

In *situation 2,* the sale price of the entire shipment must be allocated between the taxable and nontaxable articles. The tax is imposed only on the sale price attributable to the taxable articles. Thus, in the example given, the sale involves a reduction in price of one-fourth. Therefore, the tax should be based on three-fourths of $15, or $11.25, and should be computed at the rate provided by law. Likewise, in *situation 3,* the tax is imposed only on the sale price of the shipment attributable to the taxable articles. Again, the sale involves a reduction in sale price of one-fourth and results in the sale price of the taxable article at three-fourths of $5 or $3.75. The tax is based upon this price at the rate provided by law.

■   The district court rejected the Company's contention that the sale of taxable wipers and blades and non-taxable cabinets fits into Situation 3 and consequently that the selling price of the unit must be allocated between the taxable and non-taxable items.[8] Its holding was bottomed on its finding that substantially the transaction was a sale of wipers and blades at their normal price, accompanied by a free distribution of advertising materials. We think that this finding is not clearly erroneous.

The cabinets and stands "sold" by the Company were not ordinarily sold separately by the manufacturer and were not intended for resale by the dealer. The price for the total package was the same as the price for the taxable items if they were sold alone. Moreover, taxpayer's "flyers" proclaimed that the cabinets and stands "Cost dealer NOTHING. Dealer's deposit [the $36.00 paid for the cabinet or stand] on Each Section of ANCO SERVISELLER COMBINATION is fully refunded in ANCO products." The flyers advised the retailer to display the "eye-catching" cabinet and stand out in front of the retailer's shop or station to increase sales. The flyers also emphasized the utility of the cabinets and stands for display and advertising purposes by describing the distinctive yellow coloring of the cabinets and the large ANCO trademark which was printed thereon, and the twenty-four display posters advertising the Company's products, which accompanied the stand. And prior to June, 1961, the refunding certificate provided that the cabinet or stand "becomes and remains the property of [Company] loaned for use only with ANCO products," although it was thereafter changed to read that the "Dealer agrees that the Cabinet will not be used to carry any product not made by ANCO in any manner that might deceive a customer." We think that on this evidence the court could properly conclude that the non-taxable cabinets and stands were

8. Where there is no established sales price for one of the items sold, the taxable portion of the sales price of the combination is determined "on the basis of the ratio that the actual cost of producing the taxable article bears to the sum of the actual costs of producing both the taxable and non-taxable articles." Rev.Rul. 69–394, 1969, Int.Rev.Bull. No. 28, p. 26.

a free distribution of advertising materials.

■ The Company argues that the factors relied upon by the district court do not provide a meaningful basis for distinguishing the sale involved here from the combination sales described in the applicable revenue rulings. It says that it is immaterial whether the sale price of the combination was the normal selling price of the wipers alone, since the IRS rulings contemplate that the sale price for a combination will normally be less than the sum of the established prices of the individual items. It is true, as the Company argues, that this factor does not preclude the transaction from being a combination sale, see Rev.Rul. 69–394, 1969, Int.Rev.Bull. No. 28, p. 26, but it does not follow that the district court could not properly consider—as a factor in determining the nature of the transaction—that the price the retailer paid for the package was the normal price for the wipers and blades alone. The same holds true for its contention that the fact that non-taxable items are not intended for resale is irrelevant and that the IRS rulings[9] specifically provide that the non-taxable item need not be one ordinarily sold by the manufacturer. The Company also argues that the promotional nature of the package here involved does not preclude a combination sale since Situations 2 and 3, noted above, contemplate that the taxpayer will "give away" free articles as a bonus in order to promote the sale. That is not to say, however, that the fact that the non-taxable items here were advertising materials for the

Company may not be considered a factor in deciding whether for tax purposes the sale is a combination. Finally, taxpayer's assertion that the evidence does not support the court's finding that taxpayer retained significant incidents of ownership over the cabinets and stands misses the point of that finding. The court merely looked at the pre-1960 contract in which the Company retained full ownership over the cabinets and stands, and its 1960–63 contract in which use of the cabinets and stands was limited, to determine whether the present transaction was truly a *sale* of cabinets and stands, or merely a distribution of the Company's advertising material.

We think the court properly considered these factors in reaching its conclusion that the realistic effect of the transaction is that the Company sold wipers and blades to the wholesaler for the normal $24.00 price and that the cabinets and stands merely provided a means for the Company's advertising the product and avoiding the tax.[10] The sale transaction here has little in common with the combination sales exemplified in regulations where items otherwise independently sold are sold as a unit for one price with the unit to be sold together at retail and each of the products in the combination offer enhanced the sales and profit potential of the other, e. g., combination of taxable pencils and non-taxable notebooks,[11] or where a combination of taxable and non-taxable items has a special value when sold as a set, e. g., taxable croquet mallets and non-taxable croquet stakes, arches and racks.[12] Moreover, the dis-

9. *See, e. g.,* S.T. 943, 1952–1 Cum.Bull. 221. See also n. 8 *supra.*

10. We intend to express no view as to whether any of these factors, taken separately, would preclude a taxpayer from treating the transactions in question as a combination sale. For example, had the sale been of taxable windshield wipers, manufactured by taxpayer, and non-taxable windshield wiper fluid, manufactured by someone other than taxpayer and intended for the dealer's use on customers' cars, the decision would be more difficult.

11. S.T. 943, 1952–1 Cum.Bull. p. 221. *Accord.* Rev.Rul. 58–376, 1958–2 Cum. Bull. 810 (taxable pencils and non-taxable steel chains); Rev.Rul. 59–16, 1959–1 Cum.Bull. 340 (taxable musical instrument and non-taxable case and songbook); Rev.Rul. 59–224, 1969–1 Cum.Bull. 344 (taxable fishing reels and non-taxable fishing lines); Rev.Rul. 61–27, 1961–1 Cum.Bull. 481 (taxable foreign language records and non-taxable foreign language textbook).

12. Rev.Rul. 60–259, 1960–2 Cum.Bull. 318.

trict court's treatment of the transactions in question is more consistent with the rule that a manufacturer's selling and advertising expenses and its cost in distributing promotional materials are not deductible from its selling price for excise tax purposes under Section 4216 (a) of the Code and are not allowable as price rebates under Section 6416(b) (1) of the Code. Section 330.1(b) of the Treasury Regulations on Determination of Price and Price Readjustments, T.D. 6340, 1959–1 Cum.Bull. 694.[13] Fitch Co. v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472 (1945); Waterman-Bic Pen Corp. v. United States, 332 F.2d 711 (2nd Cir. 1964); General Telephone & Elec. Corp. v. United States, 364 F.2d 853, 859–863, 176 Ct.Cl. 904 (1966).[14]

We hold, therefore, that the manufacturer's excise tax was owing on the full amount of the sale price of the sales of cabinets and stands where the refunding certificates for wipers and blades were redeemed.

## II.

In approximately 11–12% of the taxpayer's sales of the cabinets and stands with refunding certificates, retailers failed to exchange the refunding certificates for the taxable products. The court

found that no tax was due on these transactions, since there was never a completed sale of taxable items. Accordingly, the court held that the Company was entitled to a refund on that percentage of the amount paid pursuant to the deficiency assessment attributable to uncompleted sales. However, it denied refund of that portion of the tax paid voluntarily on the ground that taxpayer had failed to make a proper claim for refund under Section 6416 of the Internal Revenue Code of 1954.

The sole question presented on this denial is whether the court erred in ruling that it had no jurisdiction over the claims because the Company did not file the requisite statement to "establish" that it had not included the tax in the sale price and had not collected the tax from the vendee.[15]

Section 6416 of the Code provides:

(a) *Condition to Allowance*

(1) *General Rule*—No credit or refund of any overpayment of tax imposed by \* \* \* Chapter 32 (manufacturers taxes) shall be allowed or made unless the person who paid the tax establishes, under regulations prescribed by the Secretary or his delegate, that he—

---

13. Any charge which is required by a manufacturer \* \* \* to be paid as a condition to his sale of a taxable article and which is not attributable to an expense falling within one of the exclusions provided in section \* \* \* [4216(a) of the Internal Revenue Code of 1954] is includible in the sale price upon which the tax is based. It is immaterial for this purpose that the charge \* \* \* may be separately billed to the purchaser as one earmarked for expenses incurred or to be incurred in his behalf, as for example, for advertising at the national or local level, for demonstration or display of the article, for sales promotion programs, or otherwise.

14. The Court of Claims in *General Telephone* disagreed with the Second Circuit's conclusion in *Waterman-Bic* that amounts credited to a retailer or wholesaler to re-

imburse expenditures for *local* advertising do not constitute a price rebate under Section 6416(b) of the Code, but held that such promotional materials supplied to dealers as prize trips, television lamps or bases, jackets with the manufacturer's insignia, cigarette lighters, signs, window display kits, and the painting of dealers' trucks with the manufacturer's emblem, could not be deducted from the selling price.

15. The United States does not appeal that portion of the court's decision holding that taxpayer was entitled to a refund of taxes paid pursuant to the deficiency assessment with respect to the uncompleted sales transactions. It also concedes that no tax was due on the uncompleted sales if the court had jurisdiction over the claim for refund for taxes voluntarily paid.

(A) has not included the tax in the price of the article with respect to which it was imposed and has not collected the amount of the tax from the person who purchased such article. * * *

The regulations established under this Section provide:

(d) *Manufacturers tax under chapter 32.*—(1) *In general.*—(i) *Supporting evidence required.*—No refund * * * of any overpayment of tax under chapter 32 shall be allowed unless the person who paid the tax to the United States submits in support of his claim—

(a) A statement establishing that he has not included the tax in the price of the article with respect to which it was imposed and has not collected the amount of the tax from his vendee * * *.

Part 48 of the Manufacturers and Retailers Excise Tax Regulations, Sec. 48.6416(a)–1(d), T.D. 6650, 1963–1 Cum.Bull. 307.

The claims for refund contain the following clause: "None of the tax paid in connection with the sales of stands and cabinets was passed on to customers. * * * *" The district court held that this mere allegation, without an additional supporting statement, was insufficient to comply with Section 48.6416 (a)–1(d), and that therefore the court had no jurisdiction over the claim for the taxes paid voluntarily.

■ However, with respect to the tax paid pursuant to the deficiency assessment, the claim further stated that that tax was not paid until long after the transactions to which the tax attached had occurred and that the Company had no reason to contemplate that it would have to pay the tax, since it justifiably relied on the pre-1961 informal ruling of the Service that the tax was owing on only 50% of the transaction. The court held that this statement supported the allegation that no part of the tax was passed on to wholesalers or dealers and that therefore the court had jurisdiction over the claim. We agree with the district court's holding.

■ Section 6416 of the Code requires that the taxpayer *establish*, under regulations presented by the Secretary or his delegate, that he has borne the burden of the excise tax before he can recover a refund. And the appropriate regulations require the taxpayer to furnish a "statement establishing" the same. We think that the word "establish" in the statute and regulations requires something more than a mere allegation that the tax is not passed on, although evidence formally submitted under oath or conclusive proof is not required. It is sufficient, we think, that the papers on file, whether submitted with the claim or later, present prima facie evidence that the tax was not passed on to the consumer.

■ In the case of the claim for refund of taxes voluntarily paid—unlike the claim for those paid pursuant to the deficiency assessment—the papers on file contain no evidence supporting the bare allegation in the claim.[16] Consequently, the court had no jurisdiction over this

16. Although a stipulation before the district court contains the statement that the Company sold its cabinets and stands at $24.00 per item from July 1, 1960 (before the informal conferee's report that the transaction was a combination sale) through June 30, 1963, and therefore evidences that the price was not increased to pass on the tax, there is nothing to indicate that this fact was before the Secretary or his delegate. We find nothing in the record to indicate that when the refund claim was filed either the taxpayer or the secretary or his delegate was aware of the fact that approximately 11 or 12% of the certificates had not been redeemed. The factual basis for this portion of the refund claim was not brought to the attention of the Commissioner. *Cf.* Real Estate Land Title & Trust Co. v. United States, 309 U.S. 13, 17–18, 60 S.Ct. 371, 84 L.Ed. 542 (1940).

claim. West v. United States, 397 F.2d 381 (7th Cir. 1968).[17]

For the reasons given, the judgment is affirmed.

PELL, Circuit Judge (concurring in part, dissenting in part).

In holding that there was no combination sale in the transactions here involved, both the district court and this court find their main support for such result in the fact that the non-taxable items were distributed simply for the promotion of the company's product. In other words, the cabinets and stands were advertising material distributed without charge.

This rationale appears to ignore the fact, which apparently was not in dispute, that included among the items originally received by the ultimate purchaser was a Tel-Tale Wiper Arm Pressure Indicator ostensibly having a regular retail value of $9.85. "This precision instrument," according to advertising material distributed by the company, "proves quickly, easily and with complete accuracy when wiper arms should be replaced."

Prior to June 1961, the cabinet contractually remained the property of Anderson. After June 1961, contractually the dealer agreed that the cabinet would not be used to carry any product not made by Anderson. As far as I can see, neither contractual arrangement prohibited the use of the wiper arm pressure indicator to ascertain the need of new wiper blades nor to require that such need so demonstrated would only be fulfilled by Anderson blades. Thus, it would seem arguably that to the extent that the package included this Indicator it included an item not designed necessarily to promote the sale of Anderson blades.

However, noting that the suggested retail price of the blades to be acquired by the use of the certificate was $60.00, the substantial majority of the price received by Anderson was for that which was found by the court below, and by this court, to be in the nature of advertising material. Consequently, I cannot state that even though some other court might have reached a different result that the decision of the district court was clearly erroneous and I join in affirming the decision of the district court with respect to the combination sale.

Respectfully, however, I must dissent from that portion of the decision upholding the district court's ruling that it had no jurisdiction over the eleven-twelve percent of the taxpayer sales where the certificate was not exchanged insofar as this pertained to the portion of the tax paid voluntarily. The district court held that Anderson did not file the requisite statement required by the regulations to "establish" that it had not included the tax in the sale price and had not collected the tax from the vendees insofar as the voluntary tax payment was concerned.

On this appeal, the primary thrust of the Government's position was that in its refund claim Anderson did not rely upon the fact that there had been redemption of some of the certificates and that therefore there was no taxable sale. However, the claims of the taxpayer sought to recover the entire amount of tax paid and it would seem that the lesser amount on the alternative theory would

17. The Company also argues that the District Director's form response that "In accordance with the provision of existing internal revenue laws, this notice of disallowance in full of your claim or claims is hereby given" shows that the claim was not denied on jurisdictional grounds. If the contention is that defendant waived any jurisdictional defect by this language, we see no merit in it. There is no waiver unless "[t]he showing * * * be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim." Angelus Milling Co. v. Commissioner of Internal Revenue, 325 U.S. 293, 297–298, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619 (1945). Such a showing is absent here since the form response merely indicates that taxpayer's claim is disallowed.

be entitled to consideration if the greater amount were denied.

While the Government in the alternative asserts that the district court was correct in holding that it had no jurisdiction as to the 50% of the tax based on voluntary sales, it is of interest to note that the Government did not file a cross-appeal with regard to the district court's refunding the part of the taxes paid on the other 50% where the certificate had not been redeemed.

As a matter of fact, in its original answer the Government raised the defense of jurisdiction specially in its answer to Count I (not here involved) but did not raise this as a special defense as to Count II involving the transaction before us. Subsequently, the Government did file an amended answer asserting the jurisdictional defense as to Count II and therefore the issue was before the district court.

Argument has been made and accepted in somewhat comparable cases that where the Director's letter of denial was general in terms and could be considered as rejecting a claim on its merits that there was a waiver of the technical jurisdictional ground. *See* Etheridge v. United States, 112 U.S.App.D.C. 151, 300 F.2d 906 (1962). *See also* Rogue River Trailer Manufacturing Co. v. United States, 267 F.Supp. 272 (D.Oregon 1966); *cf., however,* West v. United States, 397 F.2d 381 (7th Cir. 1968). It is unnecessary, however, in my opinion, to reach the waiver question.

Accepting arguendo the district court's interpretation of the regulation that there must be more than the bare allegation that the taxpayer had not included the tax in the price of the article, I find it difficult to justify the distinction in the finding of jurisdiction with regard to the non-voluntary tax payments as contrasted to the voluntary. The district court held that there should be a sufficient statement to establish that the taxpayer did not include the tax in the price or collect it from the customers. In each claim filed by the taxpayer the categorical statement was made: "None of the tax paid in connection with the sales of stands and cabinets was passed on to customers." The district court, it seems to me, is requiring on its interpretation of the regulation more than the allegation of the ultimate fact which would give jurisdiction but is requiring in effect the pleading of evidence in the statement accompanying the 843 claim.

On this basis the district court found that since the statement accompanying the form 843 showed that the assessment was not paid until long after the transactions to which the tax attached had occurred, the taxpayer not intending to pay tax on this 50% obviously had not included the tax. However, this line of reasoning seems inevitably to carry us to the same result with regard to the first 50% involved in the voluntary tax situation. We are here dealing with two equals each being 50%. If the second half of the proceeds of the sale, by the district court's reasoning, could not have included the tax, then it is difficult to see how the exactly equivalent amount involved in the proceeds on which tax was voluntarily paid could have included the tax.

The Government apparently recognized this dilemma in its amended answer where it asserted the jurisdictional defense by claiming that the claims for refund did not allege that the tax, presumably referring to the tax on 100% of the sale, was not included in the 50% of the sale price of cabinets and stands, referring, of course, to the 50% where the tax had been voluntarily paid.

In my opinion, the district court should have found that jurisdiction did exist and on the basis of the reasoning in his opinion, the same results should have been reached on the non-exchanged situations in both the voluntary and non-voluntary tax payments.

I would therefore reverse as to this one item on the basis that the papers on file presented prima facie that the tax was not passed on to the consumer.