**Owen D. AUSTIN and Lois C. Austin, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 71–1471.

United States Court of Appeals, Tenth Circuit.

May 4, 1972.

Rehearing Denied June 16, 1972.

E. John Eagleton, Tulsa, Okl., for plaintiffs-appellants.

Scott P. Crampton, Asst. Atty. Gen., Dept. of Justice, Meyer Rothwacks, Gilbert E. Andrews and Leonard J. Henzke, Jr., Attys., Dept. of Justice, Nathan G. Graham, U. S. Atty., of counsel, for defendant-appellee.

Before CLARK,* Associate Justice, and SETH and McWILLIAMS, Circuit Judges.

Mr. Justice CLARK:

Appellants seek the refund of income taxes paid on a 1963 tax deficiency assessed against them by the Commissioner of Internal Revenue. The tax liability claimed arose out of the liquidation of a partnership ranching business of the appellant, Owen Austin, and his former wife, Frances. The transferred liabilities of Owen Austin at the time of liquidation exceeded the adjusted basis of his assets in the partnership and a tax deficiency was levied on the excess of which Austin was relieved of liability. The trial court approved the assessment,

save for a minor accounting error, which it corrected, and we affirm.

1. We adopt the findings of the trial court. In essence they show that soon after Owen Austin's marriage to Frances W. Ingersoll on June 16, 1960, they organized the ranching partnership on an equal basis with Austin as the managing partner at a salary of $600 per month. Most of the assets contributed by Austin were secured on credit from Pauline Walter, Frances' mother. After some 17 months of partnership operation, Austin and Frances separated and she filed an action for divorce. He then ceased to act as managing partner, but the partnership was not dissolved until January 3, 1963. In the meanwhile, an accounting of the books of the partnership and the partners was conducted by a firm of certified public accountants. This audit revealed that Austin had opened numerous bank accounts during the marriage, had improperly charged the partnership account with purchases unrelated to the partnership business, had failed to contribute his share of partnership capital, and had not properly accounted for the sale of certain partnership assets. On January 3, 1963, a judgment of divorce was entered in the divorce action, which included the approval of a settlement agreement distributing and transferring all of the assets of the partnership to Frances, the former wife, upon her assumption of all of the debts of the partnership. The accounts of the partners were settled and each partner was acquitted and discharged of any and all liability to the other arising out of their partnership agreement. The partnership was dissolved and the obligation of Austin to Pauline Walter, the mother, covering the purchase price of the assets which Austin contributed to the partnership was also transferred to Frances, the former wife and partner, along with a lease that Austin held from Pauline Walter covering certain grazing lands used by the partnership.

* Associate Justice of the United States Supreme Court, Retired, sitting by designation.

Pursuant to the assumption of the liabilities of the partnership and of Austin personally, to third parties and to the partnership, Frances claimed an increased basis in the assets of the partnership for federal income tax purposes, i. e., that amount equal to the excess of liabilities she assumed under the liquidation contract and Court Order of January 3, 1963 and the value of the assets she acquired.

Austin and his wife, Lois, whom he had married in 1963 subsequent to his divorce from Frances W. Ingersoll, did not include in their income tax return any taxable gain for 1963 by reason of the liquidation contract.

The Internal Revenue Service audited the 1963 return of Frances W. Ingersoll, as well as that of Austin and his wife, Lois, and had indicated that it would levy a deficiency against the Austins and disallow the increased basis of Frances W. Ingersoll. In order to avoid this controversy and secure her increased basis in the partnership assets that had been distributed and transferred to her along with its liabilities, Frances W. Ingersoll offered to pay the deficiency levied against the Austins, if they would admit their tax liability and execute such papers that the Internal Revenue Service required in order for her to secure her increased basis. Austin agreed to realize the taxable gain and the deficiency tax was levied against him and his wife. It was paid by Frances W. Ingersoll on July 5, 1967, and she was allowed her increased tax basis by the Service.

On February 27, 1969, the Austins filed their claim for refund for the year 1963 on the sole ground that:

"The revenue agent illegally, erroneously and contrary to law and fact:

"1. Increased the taxpayer's capital gain income for the taxable year 1963 by an adjustment to a partnership transaction of $146,207.07."

On April 15, 1969, the claim was denied and on January 27, 1970, this suit was filed. On trial it developed that Austin had been charged twice with the proceeds [$15,000] of the sale of horses and a horse van. The Court ordered this error corrected, but denied all other relief requested and left Austin's gain upon the distribution and transfer of the assets of the corporation at the time of its dissolution at $138,707.07 and the tax was assessed on this amount.

2. The Issues:

■■ (a) Austin's claims are more in avoidance than in opposition. He first says that neither Sections 731 nor 752(b) of the Internal Revenue Code of 1954 are applicable because no partnership existed on January 3, 1963, but only the winding up of the business remained; that no partnership assumed any debt as required by § 752(b); that no money was distributed as required in Section 731(a) (1) of the Code; and that if any liabilities existed they arose out of the personal relationship of husband and wife and were settled by the divorce agreement. However, Section 752(b) has two clauses, the first providing that any decrease in a partner's share of the liabilities of a partnership shall be considered as a distribution of money to the partner. This would clearly include all debts of the partnership, such as notes and accounts payable ($98,537.36) and the excess contribution of Frances W. Ingersoll ($45,790.88). And the second clause provides that any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities shall be considered as a distribution of money to the partner. The distribution contract, it is true, does not state in so many words that the partnership assumed Austin's liability to it for his misappropriations of partnership income and capital in the sum of $129,012.67, but Austin's obligation was forgiven in the distribution contract, and the sole partner remaining, Frances W. Ingersoll, agreed to assume it. The partnership was then dissolved after all of the obligations were satisfied. On Austin's

debt to Pauline Walter, his former mother-in-law, the assets that he purchased from her and transferred to the partnership as his capital contribution were allowed as a credit ($71,557.37) against the assets that he misappropriated. Having received credit for his capital, he was obligated to be charged the purchase price. Indeed, Section 1.-752–1(c) of the Treasury Regulations on Income Tax (1954 Code) (26 CFR) specifically provides that "[w]here property subject to a liability is contributed by a partner to a partnership . . . the amount of the liability . . . shall be considered as a liability assumed by the partnership. Both the cases and the authorities hold without disagreement that Section 752(b) applies where a partner assumes his copartner's liabilities upon dissolution. Stillwell v. Commissioner, 46 T.C. 247 (1966); 6 Mertens Law of Federal Income Taxation, § 35.44, p. 157; McCarthy, Adjustment to Partners Basis Caused by Partnership Liabilities, 10 St. Louis U.L.J. 261, 270, 273 (1965); Rev.Rul. 57–318, 1957–2 Cum.Bull. 362; see also Willis on Partnership Taxation (1971 Ed.) § 26.03; 2 Rabkin and Johnson, Federal Income, Gift and Estate Taxation (1971 Ed.) § 16.08, p. 1667d.

■ Moreover, the general rule requiring recognition of such gain has long been established. Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). Here Austin's assets in the partnership had a basis of $71,457.37. Their transfer to Frances W. Ingersoll required the assumption of over $200,000 in liabilities.

■ (b) Austin also claims that the computation of the Internal Revenue Service is erroneous and inaccurate. It, therefore, loses its presumption of correctness. Austin's burden "is not . . . merely to show that the assessment was invalid or that the Commissioner erred . . . ." but he "must go further and produce evidence from which another and proper determination can be made." Compton v. United States, 334 F.2d 212, 216 (CA 4, 1964). Also see Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Decker v. Korth, 219 F.2d 732, 737 (CA 10, 1955); United States v. Intermountain Furniture Mfg. Co., 363 F.2d 554, 556 (CA 10, 1966). Austin's suggested partnership gain is grossly insufficient. He fails to take into account his share of the partnership liabilities on the note to Pauline Walter. We find the District Court is correct in its computation and that it has substantial support in the record.

■ (c) Next, Austin says that the partnership was dissolved prior to 1963. But § 708(b) (1) (A) is directly to the contrary providing that a partnership is terminated only if "no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership." And Section 1.708–1(b) of Treasury Regulations on Income Tax, *supra*, holds that a partnership continues in existence until its assets are distributed. Even though Austin took no part in the partnership after the divorce action was filed, it continued in being until its affairs could be wound up and an accounting made. See Baker Commodities, Inc. v. Commissioner of Internal Revenue, 415 F.2d 519 (CA 9, 1969), cert. denied, 397 U.S. 988, 90 S.Ct. 1117, 25 L.Ed.2d 395 (1970). Furthermore, Austin alleged in his complaint that the partnership was dissolved on January 3, 1963. But even if the partnership was dissolved in 1962, the transfer of assets occurred in 1963 and the taxable incident would be in 1963. See § 1001 and § 1002, Internal Revenue Code 1954 (26 U.S.C.).

■ (d) Nor did the District Court abuse its discretion in refusing to grant a new trial on the newly discovered division of marital property ground. The contention was not incorporated in the Austins' claim for refund nor raised at trial. It would entail an entirely differ-

ent line of testimony involving intricate state law and is plainly not newly discovered evidence under Rule 59 of F.R. Civ.P. Litigation has to end at some period. Certainly the Austins had ample time to raise this contention. The tax was paid in 1967, and the refund claim filed in 1969, and the case itself was not tried until August 1970.

Nor can Austin's marital property division theory be sustained. The property comprising the partnership was the separate property of each spouse and any income or loss would be separate property under Oklahoma law, save the $600 monthly salary. Turlington v. Turlington, 193 Okl. 421, 144 P.2d 957 (1944). In any event, Austin has not proven that the debts transferred were jointly acquired property and subject to a property division under Oklahoma law.

(e) Finally, Austin interposes the provisions of Regulations § 1.61–12(b) (1), which defines income as not being realized where immediately thereafter the taxpayer's liabilities exceed the value of his assets. This is a sticky question and had Austin raised it in the claim for refund or in the complaint it would be troublesome. Here, however, the claim was never raised in any of the pleadings. The Treasury Regulations on Procedure and Administration, Internal Revenue Code 1954, clearly provide that the claim must set out "in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." § 301.6402–2 (26 CFR). Here, the claim, as we have seen earlier, was stated in generalities not even stating what partnership was involved and depending on conclusory words in its entirety. It set forth no facts in support of its broad claims. Likewise, depositions of the Austins taken in May 1970 never raised the claim nor even hinted of it. Being by way of avoidance or offset, it should have been more specific.

This court has held "that the grounds relied on in a suit for refund must be reasonably encompassed by those set out in the claim for refund." Herrington v. United States, 416 F.2d 1029, 1032 (CA 10, 1969). The manifest purpose of the requirement, it concluded, "is to afford the Service an opportunity to consider and dispose of the claim without the expense and time which would be consumed if every claim had to be litigated." At 1032. Indeed, the complete absence of any specific factual allegation or ground for recovery raises a serious question as to the sufficiency of the claim as a basis for a refund suit. Allegations substantially identical in a claim for refund were found entirely inadequate. Stoller v. United States, 444 F. 2d 1391 (CA 5, 1971). Also see Anderson Co. v. United States, 447 F.2d 41, 46–47 (CA 7, 1971). Nor do we believe that the government waived the requirement of specificity. The trial was before the Court without a jury. The defense was raised for the first time in the opening statement of the Austins. A formal written motion was made to strike the defense and the evidence supporting it about 30 days thereafter, and some seven months before the case was decided. In the Court's findings and conclusions, the defense was found to have come too late. In light of the circumstances, i. e., that Austin himself was a former employee of the Internal Revenue Service and his lawyer was experienced and expert in the tax field, we do not find error.

We have examined the entire record carefully and can find no merit in any of appellant's contentions.

Affirmed.