Charles V. CLEMENT, Jr., et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

Charles V. CLEMENT, Jr., et al.,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

Nos. 72–1244, 72–1273.

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1972.

Decided Jan. 26, 1973.

Chester M. Howe, Boston, Mass., with whom Edward T. Robinson and Ely, Bartlett, Brown & Proctor, Boston, Mass., were on briefs, for Charles V. Clement, Jr., and others.

Louis A. Bradbury, Atty., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Joseph L. Tauro, U. S. Atty., Meyer Rothwacks, and Leonard J. Henzke, Jr., Attys., Tax Div., Dept. of Justice, were on brief, for United States.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On April 15, 1971, taxpayers sued in the district court to recover federal income taxes which they alleged were illegally assessed and collected for the year 1964. The United States moved to dismiss on the ground that the taxpayers had failed to file a claim for refund, as required by 26 U.S.C. § 7422(a). The district court denied the motion, but made rulings, hereinafter described, which resulted in a small recovery. We hold that the motion to dismiss should have been allowed.

I

On January 20, 1965, the District Director of the Internal Revenue Service sent taxpayers an agent's examination report proposing tax deficiencies for the years 1959–1962 of $35,381.13. These resulted from a determination that taxpayers had erroneously reported income from a trust, of which they were grantors, to the trust rather than to themselves.

Taxpayers were asked to return an enclosed waiver form if they accepted the findings, and were told that they might pay any additional tax due. They were also advised to request a conference with IRS representatives if they did not accept the findings, and to file a written protest. On January 29, 1965, a so-called 90-day letter was sent taxpayers, advising them that unless within 90 days they contested the determination of tax liability for 1959–1962 by petitioning the Tax Court, the deficiencies would be assessed for collection. There is no evidence that taxpayers either returned a waiver form or filed a petition with the Tax Court.

On April 14, 1965, taxpayers filed a joint return for the tax year 1964. The return showed a total income of $4,593.-63, deductions of $2,084.77 and exemptions of 2,400.00, leaving (on Line 11d) an amount of $108.86. Instead, however, of figuring their tax on this amount in the return, the taxpayers eliptically referred to "Schedule Attached", and then proceeded to list on lines 12 and 16 as their "Tax" and "Total Tax", the sum of $22,423.17, against which they credited withholdings (line 17a) of $14,-856.24, leaving a Balance Due of $7,-567.23.[1] Enclosed with their return was a check for that amount.

On June 13, 1967, the District Director sent taxpayers, through their counsel, another agent's examination report, proposing deficiencies for 1963 and 1965, and showing for 1964 "Corrected income tax liability", $20,875.86, and hence an overassessment of $1,547.61. The agent's report explained that taxable income for 1964 had been computed by, among other things, including in taxpayers' income the trust income, and disallowing taxpayers' asserted "Claim of Right" of $45,000 (an item not involved in this

---

1. Attached to the form was a typed statement listing four columns of figures and totals, requesting the IRS to determine a Claim of Right item not here relevant, and then providing:

| | |
|---|---:|
| Net Deficiency Per R.A.R. dated January 20, 1965 | $35,381.13 |
| Tax on amount in Line 11.d., Page 1 of this Return | 17.42 |
| Total Liability .............................. | $35,398.55 |
| Net Overassessment Per R.A.R. dated January 20, 1965 ................... | 12,975.08 |
| Amount of Tax .............................. | $22,423.47 |

case). With reference to the 1959–1962 assessment, the agent wrote:

> The taxpayer did not pay the additional assessment, however, when the taxpayer filed his 1964 individual return he computed the tax by figuring in the additional deficiency for the prior years 1959–62. . . .

> The taxpayer contends that this additional assessment of deficiency has been paid for the prior years as the result of the above described computation of tax in the 1964 years. . . .

On December 29, 1969, the assistant chief of the appellate branch office of the IRS sent to taxpayers, through their counsel, a notice of deficiencies for the taxable years 1963 and 1965, which showed, as well, an overassessment for 1964 of $1,547.61. The notice said, with reference to the overassessment:

> The overassessment claim herein for the year 1964 should not be regarded as finally determined. When final determination has been made the overassessment to the extent of the amount allowable will be made the subject of a notice of adjustment, which will reach you in due course through the office of the District Director of Internal Revenue for your district, and will be applied by that official in accordance with Section 6402 of the Internal Revenue Code of 1954, provided that you have fully protected yourself against the expiration of the statute of limitations with respect to the apparent overassessment referred to in this letter by filing with the District Director of Internal Revenue for your District a timely claim for refund on the attached form 843, the basis of which may be as set forth herein.

On April 22, 1970, the assistant chief of the appellate branch office of the IRS sent taxpayers a notice stating: "Our records indicate that no claim for refund has been filed for the above year [1964]. Accordingly, we are closing this case out of this office on the basis of no overassessment."

Taxpayers brought suit in the district court on April 15, 1971, for refund of $22,406.05. They asserted that the Commissioner lawfully could collect for 1964 only $17.42, the amount allegedly shown as their tax liability for 1964. The remainder, $22,406.05, they asserted to have been unlawfully collected for that year.

The district court ruled that the 1964 return, with attachment, was an implied § 7422(a) claim for a refund. It also ruled, however, that the 1967 agent's examination report was a disallowance of $20,875.86 and that therefore the taxpayers' suit for refund, to the extent of that amount, was untimely under the two-year limitations for suits for refund. § 6532(a)(1). The district court granted taxpayers summary judgment for the remaining $1,547.61.

Both sides have appealed.

## II

■■ At the outset we reject any contention that because the Treasury made an assessment which was, or may have been, procedurally improper, taxpayers can sue for a refund without first filing a claim for refund or credit as required by § 7422(a). Conceivably, although we do not need to decide the question, taxpayers are right that the assessment and collection for 1964 of amounts over $17.42 was illegal. Involuntary assessment and collection of an amount above that shown to be due in the return must be pursuant to statutory deficiency proceedings, not here undertaken. 26 U.S.C. §§ 6211–6216. *See* Jamison v. Repetti, 239 F.2d 901, 902 (9th Cir. 1956); Schmidt v. C. I. R., 272 F.2d 423, 429 (9th Cir. 1959). But we see nothing to take this case outside the broad coverage of § 7422(a), applying to suits for the recovery of taxes "erroneously or illegally assessed or collected" and "any sum wrongfully collected." Whether the alleged error in

assessment and collection was "procedural" or "substantive" is immaterial.[2]

■ The question must accordingly be whether taxpayers' 1964 return, the only document filed with the IRS which is alleged to qualify, is a claim for refund or credit within the meaning of § 7422(a).

Viewed as a "formal" claim, the return is obviously insufficient, as the district court found. It was not in compliance with Treasury Regulations § 301.6402—2(b) and (c), which provide for the filing of a special verified form (803) setting forth "in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Nor did it comply with Regulations § 301.6402—3(a) and (b), which require that a claim for refund made on a properly executed tax return be evidenced

> by a statement on the return setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer or shall be applied as a credit against the taxpayer's estimated income tax for the taxable year immediately succeeding the taxable year for which such return is filed.[3]

Not only did taxpayers leave blank the lines on the return showing a claim for refund or credit, they also, more importantly, failed anywhere else on the return or attachment to ask for a refund or to request the only form of credit contemplated by the regulations—namely, application of overpayment against the taxpayers' estimated income tax for the immediately succeeding taxable year.

Taxpayers argue however, that if not formally adequate, the return is at least to be considered an "informal", or, as the district court found, an "implied" claim.

Informal claims have normally been recognized only in conjunction with later-filed "perfecting" claims, the informal claim being allowed to toll the statute of limitations. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933); United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941). Use of an informal claim to toll limitations, with a later perfecting amendment to comply with the statutory command that a claim be filed "according to the provisions of law . . . and the regulations . . ." (§ 7422(a)), was borrowed by analogy from the notion that "amendment of a pleading will take effect by relation." United States v. Memphis Cotton Oil Co., above, 288 U.S. at 67, 53 S.Ct. at 280.

While we do not stay that an unperfected "informal" claim, if clearly recog-

2. In Stuart v. Chinese Chamber of Commerce, 168 F.2d 709 (9th Cir. 1948), narcotics agents seized from the safe of one "Thet" money belonging to appellees, and the I.R.S. applied it against Thet's liability. The court held that appellees need not have filed a claim for refund, since they were not "taxpayers" as contemplated by the statute.

In Steiner v. Nelson, 259 F.2d 853 (7th Cir. 1958), refunds were given in connection with an injunction against illegal collection pursuant to § 6213(a), and the government had not raised objection to the non-filing of a refund claim in the district court.

We think these and other cases cited by taxpayers are readily distinguishable from the present case.

3. 26 U.S.C. § 6402 states:

(a) General Rule.—In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of any internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person.

(b) Credits against estimated tax.—The Secretary or his delegate is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary (or his delegate) to be an overpayment of the income tax for a preceding taxable year.

nizable as such, might never be sufficient standing alone (*see* Thompson v. United States, 332 F.2d 657 (5th Cir. 1964)), the 1964 return is totally inadequate as an informal substitute for the claim contemplated by § 7422(a).

The 1964 return was a claim for refund only in the general sense that a taxpayer who remits more money than his return shows due for the taxable year may be thought to want his money back.[4] Such an assumption would be warranted in every case. Errors or misunderstandings may give rise to a claim for refund. They do not state one.

If anything is clear, it is that when taxpayers filed the 1964 return, with remittance, they were not then claiming a refund. The Commissioner, understandably, did not treat the return as a claim for refund. He need not, at his peril, "weigh circumstantial evidence" in order to ascertain a taxpayer's wishes. Barenfeld v. United States, 442 F.2d 371, 375, 194 Ct.Cl. 903 (1971). If what the agent, in 1967, proposed instead to do with the remitted and withheld amounts was unsatisfactory, taxpayers were required, before suing to recover their money, to submit their claim administratively by filing a recognizable claim. This they did not do.

Perhaps the most charitable view of the 1964 return would be that it was an informal, if unauthorized, "claim for credit." However, the present refund action is outside the scope of any such claim. *See* Pelham Hall Co. v. Carney, 111 F.2d 944, 948 (1st Cir. 1940).

Never having administratively filed the claim they now assert, taxpayers may not maintain this action.

The judgment of the district court is vacated and the case remanded with instructions to dismiss the action. No costs.

---

4. Any inference that a refund was wanted was further contingent upon the IRS' later declining to apply the monies as requested. Contrary to taxpayers' assertions, the IRS had no duty to apply the remitted and withheld amounts as indicated, although it perhaps could have done so. See 26 U.S.C. § 6402(a).