**BEAR VALLEY MUTUAL WATER COMPANY, Plaintiff-Appellee,**

v.

**R. A. RIDDELL, District Director of Internal Revenue, Defendant-Appellant.**

**No. 72-1800.**

United States Court of Appeals, Ninth Circuit.

March 20, 1974.

Ann E. Belanger, Atty. (argued), Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Michael B. Arkin (argued), Thomas H. McPeters, of Surr & Hellyer, San Bernardino, Cal., for plaintiff-appellee.

Before KOELSCH, BROWNING and KILKENNY, Circuit Judges.

KOELSCH, Circuit Judge:

The government appeals from the granting of taxpayer's motion to amend judgment, Fed.R.Civ.P. 60(b)(6), the effect of which was to increase the amount of taxes which the government must refund beyond the amount already refunded pursuant to the original judgment.[1]

The background of the present dispute is as follows:

Taxpayer is a nonprofit "mutual" irrigation company which distributes water free to its shareholders, covering the costs of capturing and distributing the

---

1. The initial decision of the district court is reported at 283 F.Supp. 949 (C.D.Cal.1968), and this court's affirmance is reported at 427 F.2d 713 (9th Cir. 1970).

water by other business operations, and by periodic "shareholder assessments." The government assessed deficiencies against taxpayer for the fiscal years ending October 31 of 1958, 1959, and 1960, and collected approximately $31,000 in corporate income taxes allegedly due. Taxpayer filed claims for refund which were denied, and suit was brought to recover the overpayments.

The suit resulted in only a partial victory for the taxpayer. The district court rejected the government's contention that the taxpayer realized income in distributing water to the shareholders, and agreed with the taxpayer that its expenses were properly deductible. However, the court held that shareholder assessments, which the taxpayer had characterized as nontaxable contributions to capital, were in part payments for the water distributed and therefore income to the taxpayer.

The district court adopted a formula for determining the proportion of the assessments includable in taxpayer's income, redetermined taxpayer's income in each of the disputed years, calculated the tax due, and entered judgment in taxpayer's favor for the amounts overpaid. As a result of the court's computations, the taxpayer was entitled to a refund of the entire amount paid for 1959, but to only a partial refund for 1958 and 1960, as the court's calculations revealed net taxable income in those years.

The judgment was entered April 22, 1968, and was affirmed on June 9, 1970. Thereafter the taxpayer accepted the ordered refund and signed a satisfaction of judgment for the disputed years. However, on June 15, 1971, the taxpayer moved to amend the judgment to order refund of the taxes for 1958 and 1960 not refunded under the original judgment. The district court granted the motion and the government brought this appeal. We reverse.

The basis for the additional relief sought by taxpayer was the existence of net operating losses in 1953 and 1955 which because the years prior to 1953 were loss years, could be carried over to eliminate the remaining tax liability for 1958 and 1960. 26 U.S.C. § 172. The government opposed the amendment of judgment on the ground that taxpayer was precluded from recovery by its failure to assert the right to loss carryovers in its claim for refund or in the suit in district court.

■■ As we agree with the government's position, we do not reach the issue, which the parties have argued extensively, of whether Rule 60(b)(6) was used appropriately to amend the judgment in this case. The failure of the taxpayer to raise the issue of loss carryovers in his claim for refund precluded refund on that basis in the district court —we are certain that the district court could not grant relief to the taxpayer by amendment of the judgment which it could not appropriately grant in the original judgment.

"No suit can be maintained against the sovereign [for illegally collected taxes] unless it is strictly within the terms of the statute under which the sovereign has consented to be sued." 10 Mertens, Law of Federal Income Taxation, § 58A.02, at 6. 28 U.S.C. § 1346 grants the district courts original jurisdiction to entertain suits for refund of illegally collected taxes. However, 26 U.S.C. § 7422(a) provides:

"(a) No Suit Prior to Filing Claim for Refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

The applicable Treasury Regulation, 26 C.F.R. § 301.6402–2(b) provides:

"(b) *Grounds set forth in claim.* (1) No refund or credit will be al-

lowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof . . . ."

■ The long-established interpretation of these provisions is that the filing of a claim with the Internal Revenue Service is a jurisdictional prerequisite to a suit for refund,[2] and, in the absence of a waiver by the government, the taxpayer cannot recover in its suit for refund on a different ground than that set forth in the claim for refund.[3] Taxpayer's claim for refund failed to include a right to a loss carryover from 1953 and 1955 to 1958 and 1960 among the grounds for contesting the tax liability, nor did it recite the facts necessary to support such a claim as required by § 301.6402–2(b). This failure is fatal to any subsequent recovery on that ground.

Taxpayer attempts to avoid the consequence of its noncompliance with § 7422(a) and § 301.6402–2(b) by contending that the issues raised by the claim for refund[4] pertained to its entire tax history and of necessity had to be decided before taxpayer could know whether loss years existed in 1953 and 1955 which were available for carryover.

We are not persuaded. Taxpayer was aware when it filed claims for refund that under its theory of the law it had net operating losses in the years prior to 1955. The completion of the audit conducted throughout the litigation by the government some three years after judgment did not, as the taxpayer argues, "establish" the losses; the audit simply confirmed what the taxpayer thought to be the case from the outset. The fact that the losses were placed in some doubt because the district court did not accept taxpayer's position on shareholder assessments does not relieve taxpayer of the responsibility of advancing all issues bearing on its tax liability for the disputed years in its claim for refund. Had taxpayer done so, the Service would have considered the loss carryovers in administratively reviewing the claim, as contemplated by § 7422(a), and might on that basis have granted refunds. If not, and the issue was litigated in the suit, the original judgment could have been held open until an audit, using the district court's formula, determined whether taxpayer had losses in 1953 and 1955 and the amounts available for carryover. Taxpayer's failure to follow the prescribed procedure, rather than an inevitable consequence of the nature of the issues and the government's audit procedure,[5] was simply a costly over-

---

2. United States v. Felt & Tarrant Co., 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); Clement v. United States, 472 F.2d 776 (1st Cir. 1973); United States v. Freedman, 444 F.2d 1387 (9th Cir. 1971); Thompson v. United States, 308 F.2d 628, 634 (9th Cir. 1962); Nemours Corp. v. United States, 188 F.2d 745, 749 (3rd Cir. 1951).

3. Real Estate Title Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940); Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927); Austin v. United States, 461 F.2d 733 (10th Cir. 1972); Bel v. United States, 452 F.2d 683, 695 (5th Cir. 1971); Stoller v. United States, 444 F.2d 1391 (5th Cir. 1971); Ladd v. Riddell, 309 F.2d 51, 54 (9th Cir. 1962); Scharpf v. United States, 157 F.Supp. 434 (D.Or.1956),

aff'd, 250 F.2d 744 (9th Cir. 1957); Nemours Corp. v. United States, 188 F.2d 745, 750 (3rd Cir. 1951).

4. The grounds for refund stated in taxpayer's claim for refund, on which it also relied in its suit in district court, were (a) that disallowed business expenses were properly deductible, (b) that shareholder assessments were nontaxable contributions to capital, (c) that taxpayer did not receive constructive income in distributing water, and (d) that taxpayer was not subject to an unrelated business income tax.

5. Taxpayer complains of the government's refusal to conduct the audit on the basis of the district court's decision until that decision was upheld by this court, thereby delaying the determination that taxpayer had loss years available for carryover. While we

sight. *See* Young v. United States, 203 F.2d 686 (8th Cir. 1953); Barry-Wehmiller Machine Co. v. Commissioner, 20 T.C. 705 (1953).

■ Finally, taxpayer contends that the government has waived its right to rely on the variance.[6] We find no waiver in this case. The Court has made clear that in order to establish that the Service has waived compliance with the regulation's requirement—that all grounds for refund be set out in the claim for refund—

"The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission." Angelus Milling Co. v. Commissioner, 325 U.S. 293, 297–298, 65 S.Ct. 1162, 1165, 89 L.Ed. 1619 (1945).

Far from having the clear showing required by *Angelus Milling, supra,* we find no indication in the record, nor has the taxpayer pointed any out to us, that the Service focused attention on the merits of taxpayer's claim of loss carryovers until after taxpayer's motion to amend judgment.[7] The Service then asserted the variance as a ground for denying the refund, thereby insisting on its right to compliance with the regulation. There is no evidence that the Service considered loss carryovers in originally denying the claim for refund, and the issue was not litigated. *See* Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927).

■ This is not a situation such as that found in Brown v. United States, 427 F.2d 57 (9th Cir. 1970), where we held that the government, by interjecting a defense at trial different from that relied on in disallowing the claim, waived its right to object to the taxpayer's response, which advanced a ground for recovery different from that set out in the claim for refund, but which was based on the government's new position. Here the government's position has been consistent throughout the entire litigation, and taxpayer has not been confronted with any surprises which would excuse compliance with the regulation.[8]

note that the figures and formula were equally available to taxpayer, the refusal is irrelevant because it in no way affected the dispositive issue, which was taxpayer's failure to include the loss carryover ground in the claim for refund.

6. Recognizing that the purpose of the regulation is to inform the Commissioner of the basis for taxpayer's claim and thereby expedite research into the merits of a claim, the Court has held that the Commissioner may either insist on compliance with the regulation or waive compliance and inspect the merits of the claim. Having done so, the Commissioner may not thereafter rely on the variance in grounds to defend against a meritorious claim. *See* Angelus Milling Co. v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945); Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927).

7. While we do not understand taxpayer to rely on the ground that the claim for refund was either formally or informally amended to include the omitted ground, we note in passing that there is nothing in the record to support such a conclusion, which would require that the amendment have occurred before the rejection of the original claims in November, 1964. *See* United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405 (1938); United States v. Wells Fargo Bank, 393 F.2d 272, 275 (9th Cir. 1968).

8. Taxpayer contends that it comes within the *Brown* rationale because the issues in this case were "injected" by the government in assessing a tax deficiency, thereby permitting taxpayer to respond with any basis for recovery available. Such an extension of the *Brown* holding would render § 7422(a) and § 301.6402–2(b) meaningless, and we decline to adopt it.

The most that can be said for taxpayer's contention of "waiver" is that the issues litigated affected taxpayer's entire tax history, that the government was aware of that history, and that the Service's knowledge of the tax law would necessarily lead it to an awareness of the possible availability of loss carryovers to the years in dispute. The government's after-acquired awareness of the omitted basis for relief is insufficient to indicate an intent to waive compliance with the requirement of the regulation. The very point of the regulation is to promote orderly tax administration by requiring taxpayers to focus attention on the dispositive issues at the beginning of the process of administrative review, rather than requiring the Service to gradually sort out the legal basis for claims presented to it. We decline to undermine the purpose of the regulation by finding a waiver in the circumstances of this case. The Service is entitled to insist on compliance with the regulation. It has so insisted, and the additional refund should not have been granted.

The amended judgment entered December 16, 1971, is reversed.

KILKENNY, Senior Circuit Judge (dissenting):

Since the government does not challenge the validity nor the amount of the refund awarded by the lower court, invited the litigation in the first instance and was at all times fully aware of the nature of appellee's claims for net operating losses in prior years, I would hold that it is in no position to rely on formalities and would affirm on the authority of Tucker v. Alexander, 275 U.S. 228, 231, 48 S.Ct. 45, 72 L.Ed. 253 (1927), and Brown v. United States, 427 F.2d 57, 62 (CA 9 1970).

The lower court, in my opinion, did not abuse its discretion in amending the judgment under the provisions of Rule 60(b)(6), FRCivP.