**ELMBROOK HOME, INC.**

v.

**UNITED STATES of America.**

**Civ. A. No. 82–0171 P.**

United States District Court,
D. Rhode Island.

March 21, 1983.

Ronald F. Cascione, Providence, R.I., for plaintiff.

Lincoln C. Almond, U.S. Atty., Providence, R.I., Robert G. Nath, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

PETTINE, Senior District Judge.

The plaintiff, a Rhode Island corporation, engaged in the business of operating a

nursing home in this district, seeks a refund of fraud penalties assessed against it for the years 1973, 1974 and 1975. The case is before the Court on cross motions for judgment on the pleadings.

For each of these years timely income tax returns were filed. The Internal Revenue Service conducted an audit and concluded that expense items not properly attributable to the corporate entity had been fraudulently deducted; as a result the reported taxable income was recomputed by the Internal Revenue Service and fraud penalties in the amount of $6,109.91 for 1973, $8,340.72 for 1974 and $373.92 for 1974 were assessed pursuant to Section 6653(b) of the Internal Revenue Code, which penalties the plaintiff paid.

For the same years in question the plaintiff had received from the Rhode Island Department of Social and Rehabilitative Services (DSRS) overpayments in the amounts of $48,208.31 for 1973, $31,377.36 for 1974 and $2,930.02 for 1975; these overpayments were included as income for each of the aforesaid three years and accordingly taxes were paid thereon; however, in 1978–79, when discovered by DSRS, the overpayments were refunded to the State of Rhode Island and the plaintiff recomputed its taxes for '73, '74 and '75 by excluding as income the said overpayments. The recomputation found there were no tax liabilities for each of the '73, '74 and '75 years.

In 1979 the plaintiff filed for a tax refund on the income which was inappropriately included and for the fraud penalties it paid totaling $53,544.31; this was allowed excepting for the fraud penalties amounting to $14,824.55.

*Plaintiff's Argument*

The plaintiff contends that having removed the prior years' deficiencies through its recomputation of the tax, the fraud penalties were not validly asserted and, therefore, should now be refunded. The reasoning employed is based, primarily, on the wording of Sections 1341 and 6653(b) of the Internal Revenue Code.

Section 1341, which provides for the computation of tax when the taxpayer restores

substantial amounts received, provides in pertinent part:

(a) GENERAL RULE—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

Section 6653(b) of the Internal Revenue Code provides that

if any part of an *underpayment* . . . of tax required to be shown on a return is due to fraud there shall be added to the *tax* an amount equal to 50% of the *underpayment.* (emphasis added).

The design of these statutes is not to enrich the government but merely to provide a procedure whereby it may be indemnified for losses actually suffered by reason of the taxpayer's fraud. The statutes thus provide

a safeguard for the protection of the revenue and to reimburse the government for the heavy expense of litigation and laws resulting from the taxpayer's fraud. In *Stockwell v. United States,* 13 WALL 531, 547, 551, 20 L.Ed. 491, the court said of a provision which added double the

value of the goods: "It must therefore be considered as remedial, as providing indemnity for loss. And it is not the less so because the liability of the wrongdoer is measured by double the value of the goods received, concealed, or purchased, instead of their single value. The act of abstracting goods illegally imported, receiving, concealing or buying them, interposes difficulties in the way of a government seizure, and impairs, therefore, the value of the government right. It is, then, hardly accurate to say that the only loss the government can sustain from concealing the goods liable to seizure is their single value, or to assert that the liability imposed by the statute of double the value is arbitrary and without reference to indemnification. *Double the value may not be more than complete indemnity . . . ."* (emphasis added).[1]

*Helvering v. Mitchell,* 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938).

In support of its position, the plaintiff looks to the statute and claims that fraud alone is not enough to trigger the operation of Section 6653(b) because it is specific in requiring as a premise, an "underpayment" of tax; if the taxpayer has not underpaid there can be no tax liability ergo no underpayment to which a fraud penalty can attach pursuant to said Section 6653(b).

The plaintiff further contends that Section 1341 of the Internal Revenue Code does nothing more than provide a method for computing prior years' taxes and that it must be read in conjunction with Section 6653(b) to determine if there has been an "underpayment" of tax.

Section 1341(b)(1) provides that "if the decrease in tax ascertained under subsection (a)(5)(B) exceeds the tax imposed by this chapter for the taxable year (computed without the deductions) such excess shall be considered to be a payment of tax on the last day prescribed by law for the payment of tax for the taxable year and shall be refunded or credited in the same manner as if it were an overpayment for such taxable year." It is clear this section provides a means for recomputing prior years. The plaintiff argues:

The interpretation by the United States that this fiction created by Section 1341(b) provides the government and denies the taxpayer concomitantly the reality of the circumstances, namely, that there has never been an overpayment of tax by the taxpayer in the recomputing year, but rather that there was an overpayment by the taxpayer in a prior tax year, and to ignore the fact that this is a recomputation of a tax, and to ignore the fact that Congress provided a means for such a recomputation in certain instances by creating a fiction that such recomputation only deals with the recomputing tax year, frustrates the actual intent of the legislation. It is felt that that particular provision would merely prevent the taxpayer from asserting an interest claim against the government for such overpayment since it was his fault in the first place that he wrongfully included certain income. Section 1341(a)(3), (4) and (5) were intended by Congress to provide the taxpayer with the maximum benefit from a recomputation provided, however, the taxpayer could not assess or demand interest on any overpayment which he made in a prior year.

Plaintiff's Memorandum at 9, 10.

Here the taxpayer is in an anomalous situation. For example, if the taxpayer had not included the income in the prior taxable year there would have been no overpayment of taxes and as a consequence, no entitlement to interest. In this case if the plaintiff had not included the overpayments in the prior taxable years there would be no underpayment of taxes and, therefore, the government is not entitled to any fraud penalty. In short, there must be a parity of

---

**1.** True in some instances the fraud penalty would not repay the government, but in others the fraud payment would exceed the effort. The example given by the plaintiff hypothesizes a $300 dollar fraud recovery with a resulting penalty of $150 which recovery required "tremendous" effort as against $500,000 recovery with a resulting penalty of $250,000 that required a minimum effort. Plaintiff's Memorandum p. 5.

entitlement between the government and taxpayer on recomputation of taxes.

*Findings*

The plaintiff offers an ingenious dialectic assembly which fails to recognize the basics of fraudulent conduct; the act, per se, when committed, like history, is frozen in time.

■ To begin with the complaint; as the defendant points out it neither alleges nor contends that the tax returns, *as and when filed,* were not fraudulent, nor that the fraud penalties were not properly assessed as to the fraudulent expenses reported; they are not, as they cannot, asserting there were no misrepresentations in the deductions that were taken. True enough, a recomputation under Section 1341 of the Internal Revenue Code, after overpayments were refunded, established there was no "underpayment" for the years in question to which a fraud penalty could attach; however, this is of no consequence because the fraud was committed when the return was filed. The government correctly cites *Wiseley v. Commissioner,* 13 T.C. 253 (1949), *rev'd on other grounds,* 185 F.2d 263 (6th Cir.1950), [where] the filing of an amended return resulting in a refund did not relieve the taxpayer of the fraud penalty. Accord, *Hirschman v. Commissioner,* 12 T.C. 1223 (1949). *See also George M. Still, Inc. v. Commissioner,* 19 T.C. 1072 (1953), *aff'd on other grounds,* 218 F.2d 639 (2d Cir.1955). Moreover, the subsequent payment of the deficiency will not relieve the taxpayer who has filed a fraudulent return. *McDonnell v. Commissioner,* 6 B.T.A. 685 (1927); *Wilson v. Commissioner,* 7 T.C. 395 (1946); *Romm v. Commissioner,* 245 F.2d 730 (4th Cir.), *cert. denied* 355 U.S. 862, 78 S.Ct. 94, 2 L.Ed.2d 68 (1957).

In *Simon v. Commissioner,* 248 F.2d 869 (8th Cir.1957), the taxpayer was assessed the fraud and delinquency penalties for 1943, but contended that the amount of these penalties should have been reduced by an allowable loss carryback from 1945. The Court unequivocally rejected the argument, 248 F.2d at 877:

> The tax for 1943 became due and payable on the date the taxpayer was required to file her 1943 return, and the penalties became due and payable on the same date. The carryback provision does not relieve the taxpayer of the obligation to pay the tax in full when it falls due * *. In the case just cited [*Manning v. Seeley Tube and Box Co.,* 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950)] the Court held that where a deficiency and interest have been assessed, a subsequent carryback loss which abates the deficiency does not abate the interest assessed. The reasoning of the Manning case supports the fraud and delinquency penalties here determined.

Government's Memorandum at 6.

■ The plaintiff does not accept the absolute in the case that in '73, '74 and '75 when it received the payments from the State of Rhode Island it was income even though mistakenly paid, and as such it was required to pay income taxes thereon. Money "earned" honestly or dishonestly, received innocently through mistake of fact or fraudulently, is income to which there attaches tax liability. *United States v. James,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). The plaintiff's theory that one can recompute taxes in a subsequent year and show there was no tax due for the year in question and thus negate a fraud and the penalties imposed on the tax return as filed, is fallacious and specious. On this postulate one could contend that an embezzler, who pays income taxes on his dishonest gains but when discovered is forced to repay the money, is thus exonerated of his crime.

The fact is the fraud was committed and has never been refuted. If the plaintiff felt it was wrongly assessed in '73, '74 and '75 by virtue of the audits that were conducted, it could have chosen not to pay the money and contested the matter in the tax court, or paid the tax and filed for a refund which if administratively refused could have been

resolved in the Federal Court.[2] These procedures, within a permissible time frame, were not instituted; it is too late now. The refund it successfully sought in no way concerned itself with the fraud penalties. Based on the income reported for the questioned years, there were, indeed, underpayments of taxes. Section 1341 provides the formula for determining the plaintiff's tax for 1978 and 1979 by looking back to '73, '74 and '75, but because of the procedures provided by the Internal Revenue Code it does not permit the reopening of those years.[3]

Both parties argue the remedial nature of Section 6653(b) but it escapes me how the provision helps the plaintiff. Redundancy abounds in noting again that the sine qua non is fraud. In 1973, '74, '75 the plaintiff had the money; it is not being penalized for having that money; the pain it presently suffers is for the fraudulent deductions it took against that money.

Finally to argue there is fundamental unfairness in exacting from a taxpayer fraud penalties for years where no tax is due after a recomputation based on refund of moneys received, but yet exempt the government from interest payments on the income tax payment it received and has to refund, again misses the point. The fraud was the overt act of the taxpayer; the income tax money received by the government was based on the representations of the taxpayer; in neither case did the government play a part. Furthermore, if there is no fraud the taxpayer is rendered whole and the government should not be penalized for conduct in which it played no part.

The plaintiff's motion for judgment on the pleadings is denied; the government's motion is granted; judgment will be entered for the defendant. An order will be prepared accordingly.

**2.** 26 U.S.C. Sec. 7422(a) requires that an action for a refund must be preceded by the filing of a claim with the Secretary [of the Treasury] "according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." *Clement v. United States*, 472 F.2d 776, 778 (1st Cir.), *cert. denied*, 414 U.S. 864, 94 S.Ct. 115, 38 L.Ed.2d 85 (1973). As pointed out by the government the claim for refund had to be filed within two years of the time the tax was paid. 26 U.S.C. Sec. 6532. The plaintiff simply did not do this. The refund sought here was for 1978 and 1979 as computed pursuant to Sec. 1341.

**3.** Section 1341 gives the taxpayer the option of selecting one of two methods to calculate a refund due in the current year. Section 1341(a)(4) provides that the current year's tax is the tax for the current year computed with the newly discovered deduction. The other method is set forth in Section 1341(a)(5). That method requires a hypothetical calculation of the *prior* year's tax in order to subtract that tax from the current year's tax (computed without the deduction). The taxpayer must elect the method which results in the least tax. Neither method affects the imposition of the fraud penalty.